NO. 93-163

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

DONNA L. DOWD,

Petitioner and Respondent,

and

JAMES J. DOWD,

Respondent and Appellant.

FILED

NOV - 2 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD::

For Appellant:

Arthur D. Agnellino, Attorney at Law, Missoula
Montana

For Respondent:

P. Mars Scott; Mulroney, Delaney & Scott, Missoula
Montana

Submitted on Briefs:   July 29, 1993

Decided:   November 2, 1993

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant, James J. Dowd (Jim), appeals the Fourth Judicial District Court's findings of fact, conclusions of law and decree of dissolution entered October 5, 1992, which distributed the marital property and debts of the couple.

We affirm.

Jim presents the following issues for our review:

1.   Did the District Court err by not considering § 40-4-202(1), MCA, when it divided the marital estate?

2.   Did the District Court err by not considering Jim% contribution as the homemaker when it awarded Donna the bakery?

3.   Did the District Court err when it awarded Donna the bakery and concluded in its findings that if the bakery was not awarded to Donna the court probably would have awarded Donna maintenance?

4.  Did the District Court err in awarding both parties a one-half interest in the proceeds from the land and family home when the court also ordered Jim to make the land payments on the property?

5.  Did the District Court err by failing to consider that Donna previously paid the marital debts from the proceeds of the bakery business which was allegedly jointly owned by the couple?

Jim and Donna were married on July 7, 1977, in Houston, Texas. Two children were born of their marriage, Casey, now age 9, and Kevin, now age 6.  At the time of this appeal Jim was 48.  He was

employed as a commercial fisherman in Alaska. Donna was 41. She operated a bakery in Houston, Texas, from her office in Superior, Montana.

The couple separated in 1989 when Jim left the family home to travel to Seattle to become a commercial fisherman. During the marriage the couple acquired certain property and debts which are the focus of this appeal.

On October 1, 1979, the couple purchased a bakery in Houston, Texas. Initially, they intended to operate the bakery as a "mom and pop" operation. However, after a few months of continuous disagreement, Donna assumed the day-to-day management of the bakery.

The couple always treated the bakery as Donna's bakery. In fact, she personally borrowed money to purchase equipment for the bakery; negotiated employee wages and salaries; had the business licenses solely in her name; and made all the decisions regarding the operation of the bakery. Donna has operated the bakery alone for almost twelve years and continues to do so today. Conversely, Jim has had nothing to do with the bakery for the last five years.

Although Jim contributed between $2,000 and $2,500 for the down payment on the bakery, Donna has essentially paid the entire purchase price, $25,000, from a loan and the earnings of the bakery. Currently, the bakery is Donna's sole source of income. In 1991, Donna's bakery netted approximately $22,000. Jim's wages that year as a commercial fisherman were between $45,000 and $46,000.

In 1981, the couple moved from Texas to St. Reqis, Montana. They purchased 21.24 acres of land from Lincoln's Silver Dollar Bar & Gift Shop, Inc., on a contract for deed. The land payments on the contract for deed were approximately $363 per month. In 1984, the couple constructed a log home on the land with the help of a friend.

The couple separated in 1989. After the separation, Donna used the bakery's profits to support herself, the family home, the marital assets and the two children. In fact, Donna has continuously negotiated with the couple's creditors (including the Internal Revenue Service, a law firm in Missoula, Visa and Master Card); paid the marital debts; supported and raised the children; made improvements to the family home; redeemed the family home and acreage from a tax sale; and logged the property to pay thirteen delinquent land payments with the logging proceeds. The District Court found that she was financially responsible for the preservation of the marital estate.

On the other hand, the District Court found that Jim was financially irresponsible to the marital estate and to his family. Specifically, after the separation in 1989, he did not contribute his earnings to the marital estate or the children until the District Court ordered him to pay the land payments in lieu of child support and twice ordered him to pay the children's health insurance.

On June 1, 1990, Donna filed a petition for dissolution. Subsequently, she filed an amended petition for dissolution on

4

September 14, 1990. Jim filed a response on October 29, 1990.

The matter came to trial on September 11, 1992. The parties stipulated to reserve issues of custody, visitation and child support and the court accepted the stipulation and reserved the issues. On October 5, 1992, the District Court issued its findings of fact, conclusions of law and decree of dissolution.

On October 8, 1992, Donna's attorney served a notice of entry of decree of dissolution on Jim's attorney. Subsequently, however, Jim's attorney moved the District Court to alter or amend its judgmentpursuantto Rule 59(g), M.R.Civ.P., or in the alternative, for relief of a judgment order under Rule 60(b), M.R.Civ.P. The court failed to rule on the motions within forty-five days. Thus, the motions were deemed denied. On December 29, 1992, Jim filed a notice of appeal with this Court.

We have previously declared that in reviewing factual findings which divide marital property "[o]ur standard of review . . . is whether the district court's findings are clearly erroneous." In re Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 219 (citations omitted). Additionally, we scrutinize the district court's legal conclusions de novo and examine whether the court interpreted the law correctly. Danelson, 833 P.2d at 219-220.

We grant the district court broad discretion to equitably apportion the marital estate. In re Marriage of Sirucek (1986), 219 Mont. 334, 342, 712 P.2d 769, 774. Accordingly, where, as here, a party challenges the distribution of the marital estate, our review is limited to determining whether the district court

abused its discretion.

I

The District Court apportioned numerous items of property and debts between the parties. Jim challenges the following distributions: the bakery, the home along with its personal and real property and the debts.

The court awarded Donna the bakery as her sole property. Further, the court ordered the parties to continue to jointly own the land and family home (property) until the last child reached age eighteen or graduated from high school, whichever occurred later. Donna and the children are allowed to continue to reside at the residence until the property is sold. On the other hand, Jim must pay the remaining land payments and taxes. When the property is sold, the parties must equally split the proceeds. The District Court also allowed the parties, if they agreed, to sell the property to a third party or to the other party before the last child reached eighteen or graduated from high school.

First, Jim argues, generally, that the District Court failed to consider the factors under § 40-4-202(1), MCA. We conclude, however, that the court considered the factors of § 40-4-202(1), MCA, the court's extensive findings of fact negate Jim's argument. Those findings include: the parties were 47 and 40 years old; were married for twelve years before they separated; were both in good health; Jim was a commercial fisherman and Donna operated a bakery; Jim earned almost $50,000 a year with numerous benefits, while Donna earned $22,000 a year without benefits: Jim completed the

6

ninth grade, while Donna completed high school: over the years, Jim was employed as a longshoreman and worked at odd jobs and Donna worked as a bank teller, and in an insurance department at a bank: Jim was capable of earning excellent wages and sustaining full-time employment under strenuous circumstances: Donna solely managed the bakery for almost twelve years: Donna's sole source of income was the bakery; aside from the bakery, Donna was out of the labor market for approximately ten years; managing the bakery was a full-time job: the bakery provided the main financial support of the family: Donna was unilaterally responsible for keeping the marital estate intact; Donna single-handedly worked hard to support the family; Donna maintained the family home; Donna negotiated with and paid the couple's creditors; the award of the bakery to Donna was in lieu of maintenance; Jim neglected to pay the couple's creditors until the court ordered him to pay the land payments in lieu of child support: and Jim has not contributed any money to the preservation of the marital estate, except the court ordered land payments. Clearly, this excerpted barrage of facts confirms that the District Court covered the gambit of § 40-4-202(1), MCA.

Additionally, the court detailed the property and debts of the marriage. The record conclusively establishes that the court considered the factors of § 40-4-202(1), MCA, when it divided the marital property. We hold that the District Court properly followed § 40-4-202(1), MCA.

II

Next, Jim challenges the court's distribution of the marital

7

assets and debts. He argues that the court, on four occasions, acted inequitably or abused its discretion when it divided the couple's assets.

Jim maintains that the District Court abused its discretion by failing to consider his contribution as the homemaker, which allowed Donna to operate the bakery. This argument lacks merit.

Jim testified that, while Donna operated the bakery, he built the family home, cared for the children, hauled water, mended fences, drove Donna to and from work, and maintained the family home. On the other hand, Donna testified that Jim only contributed a small portion of the down payment, and only participated in the management of the bakery for the first few months.

The District Court specifically found that Donna was primarily responsible for the maintenance and operation of the bakery. The court refused to acknowledge Jim's contribution as the homemaker. Effectively, it found Donna's testimony more credible than Jim's testimony. We refuse to disturb the District Court's determination of the credibility of witnesses. <u>See</u> In <u>re</u> Marriage of Porter (1991), 247 Mont. 395, 398, 807 P.2d 192, 194.

We hold that the District Court did not abuse its discretion when it did not rely on Jim's testimony to establish his contribution to the bakery as the homemaker. The District Court's determination that Donna was primarily responsible for the maintenance and continuing operation of the bakery is supported by the record.

8

Further, Jim argues that the District Court abused its discretion by finding that if Donna was not awarded the bakery, then the District Court would probably award Donna maintenance payments. He is mistaken.

Jim misinterprets §§ 40-4-202 and -203, MCA. These statutes were enacted "to encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance." Commission Comments MCA Annotations, Title 40, (1992), Vol. 7, p. 170; In re Marriage of Scott (1990), 246 Mont. 10, 24, 803 P.2d 620, 629. Moreover, § 40-4-202(1), MCA, specifically requires the court to consider "whether the apportionment [of property] is in lieu of . . . maintenance . . . ." Accordingly, we conclude that §§ 40-4-202 and -203, MCA, when read together, compel the district court, when proper, to order a division of marital property, as opposed to an award of maintenance, to satisfy the financial needs of the parties.

Here, the District Court determined that Donna should be awarded the bakery because she was primarily responsible for its maintenance and operation. Further, the court found that the bakery was her only realistic source of income. The court also noted that if it decided to divide the bakery, as Jim proposed, then Jim would probably have to pay maintenance to Donna.

We conclude that the District Court properly followed the statutory mandates of §§ 40-4-202(1) and -203, MCA, not only by considering the factors and specifically considering that the

division was in lieu of maintenance, but also by electing to distribute property, instead of awarding maintenance. We hold that the District Court did not abuse its discretion when it awarded Donna the bakery.

IV

Jim contends the District Court abused its discretion by awarding Donna one-half of the proceeds of the family home. Jim argues that since he is paying the remaining land payments, in effect, he is paying both his one-half and Donna's one-half of the equity in the property and, therefore, he should retain the entire proceeds of the property when it is sold. We disagree.

Jim forgets that while the parties were separated, Donna paid the monthly payments on the loan which financed the construction of the home. Further, he ignores the fact that Donna paid the land payments before the court ordered him to pay the land payments.

The District Court recognized that Donna paid the home loan, the land payments, and numerous marital debts during the couple's separation. The court also noted that if Donna had not expended her efforts to preserve the marital estate, there would be no marital estate to divide.

The District Court acted equitably. The court found that the contributions of the parties were not equal. Donna contributed her portion of the equity in the property. Jim, however, failed to contribute his portion. Thus, the court ordered Jim to pay the remaining land payments. The District Court's order equalizes Jim's contribution with Donna's contribution.

10

Further, by ordering the future sale of the property and a split of the proceeds, the District Court has guaranteed that each party will retain his or her equity in the property.  We hold that the District Court was not clearly erroneous.


V

Finally, Jim challenges the District Court's determination of the parties' net worth.  This convoluted argument is not supported by the record.

The District Court meticulously organized both the marital property and marital debts in its findings and conclusions.  The court also made a conscientious effort to equitably divide the property and debts between the parties.

Jim, however, ridicules the District Court's thorough process. First, he assumes that he owns half of the bakery.  He then builds on that assumption by suggesting Donna paid marital debts from the bakery proceeds.  He concludes that he should be credited with one-half of the **marital** debts which Donna paid from the bakery proceeds.  This argument is absurd and is not supported by the record or by Montana law.

When dividing **marital** property, the district court should not be concerned with the ownership status of property acquired during the marriage.  In fact, if property is acquired during the marriage, it is part of the marital estate regardless of who owns the property.  Section 40-4-202(1), MCA.  The court's only obligation is to consider the factors of § 40-4-202(1), MCA, and

equitably apportion the marital estate. In re Marriage of Scott (1992), 254 Mont. 81, 87, 835 P.2d 710, 714.

Here, the bakery is a marital asset. However, that fact, by itself, does not entitle Jim to claim credit for one-half of the debts paid from the bakery's proceeds. The District Court found that Donna exclusively operated the bakery and exclusively paid the debts from the bakery proceeds. Thus, the court credited her for paying the debts.

Moreover, the record reveals that Jim did not pay these debts. He did not work at the bakery when the debts were paid, nor did he have any part in managing the bakery. He also failed to send money from Alaska to pay these debts. Thus, he is not entitled to claim that he paid the debts.

The court correctly refused to grant Jim a windfall. We conclude that the District Court acted equitably and within its discretion when it refused to credit Jim for the payment of debts which he did not pay.

After a review of the record, we conclude that the District Court properly followed the factors of § 40-4-202(1), MCA, when it conscientiously considered the facts and achieved an equitable division of the marital estate. We hold that the District Court did not abuse its discretion when it divided the marital estate.

Affirmed.

John Conway Harrison
Justice

12

We concur:

_____
Chief Justice

_____

_____
Justices

13