DA 10-0505

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 106

IN RE THE MARRIAGE OF
RANDY L. STEVENS,

        Petitioner and Appellant,

   and

TIFFANY E. STEVENS,

        Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifteenth Judicial District, In and For the County of Roosevelt, Cause No. DR 46-2009-9 Honorable David Cybulski, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Phillip N. Carter, Attorney at Law; Sidney, Montana

        For Appellee:

            Mary L. Zemyan, Attorney at Law; Wolf Point, Montana

                       Submitted on Briefs: April 13, 2011

                            Decided: May 17, 2011

Filed:

_____
                       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Randy Stevens (Randy) filed a petition for dissolution of his marriage to Appellee Tiffany Stevens (Tiffany) in the Fifteenth Judicial District Court, Sheridan County. Following trial, the District Court found the marriage to be irretrievably broken, awarded primary residential custody of the parties' three minor children to Tiffany, and ordered Randy to pay $1,188 per month in child support and $2,500 toward Tiffany's attorney fees. We affirm in part, reverse in part, and remand to the District Court for further proceedings consistent with this Opinion. This appeal raises the following issues:

¶2 ***I. Did the District Court err in calculating Randy's child support obligation?***

¶3 ***II. Did the District Court err by ordering Randy to reimburse Tiffany for her attorney fees?***

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Randy and Tiffany were married in December 2004 and separated in June of 2008. They have three minor children. After Randy and Tiffany separated, Randy began a relationship with Samantha, with whom he has a child. Randy resides with Samantha and this child. After Randy filed for dissolution of marriage, the District Court adopted an interim parenting plan, ordered temporary spousal maintenance of $500 per month, and temporary child support of $303 per month. The court denied Tiffany's request for attorney fees.

¶5 A bench trial was conducted in which Randy and Tiffany testified. The District Court made oral rulings at the close of trial which included adopting a permanent

2

parenting plan, determining the parties' income for child support purposes, and awarding attorney fees to Tiffany. Tiffany's attorney was directed to prepare a proposed order, inclusive of the District Court's oral rulings. Randy filed objections to the proposed order, arguing his child support obligation was not properly calculated by Tiffany and, at the request of the District Court, filed proposed child support calculations. Specifically, he contested the inclusion of his "overtime" income, the exclusion of an allowance for his fourth child, and the exclusion of his payments for the children's health insurance. Tiffany filed a response in which she agreed Randy should receive an allowance for his fourth child, but opposed Randy's other objections. The District Court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution on September 14, 2010. The Court set child support in the amount of $1,188 per month and awarded attorney fees to Tiffany in the amount of $2,500. Randy appeals.

**STANDARD OF REVIEW**

¶6     This Court reviews a child support award for abuse of discretion. *In re Marriage of Graham*, 2008 MT 435, ¶ 8, 347 Mont. 483, 199 P.3d 211 (citing *Albrecht v. Albrecht*, 2002 MT 227, ¶ 7, 311 Mont. 412, 56 P.3d 339). "A presumption exists in favor of the trial court's determination of child support and we will not overturn its findings unless the court abused its discretion." *In re Marriage of Martinich-Buhl*, 2002 MT 224, ¶ 14, 311 Mont. 375, 56 P.3d 317 (citations omitted).

¶7     We review a district court's award of attorney fees in a dissolution proceeding for abuse of discretion. *In re Marriage of Harkin*, 2000 MT 105, ¶ 70, 299 Mont. 298, 999

P.2d 969; *In re Marriage of Dennison*, 2006 MT 56, ¶ 23, 331 Mont. 315, 132 P.3d 535 (citation omitted). "A district court has abused its discretion if substantial evidence does not support its award of attorney's fees." *Dennison*, ¶ 23 (citation omitted).

## DISCUSSION

¶8     *I. Did the District Court err in calculating Randy's child support obligation?*

¶9     Randy argues that the District Court erred in determining his child support obligation in three ways:  by including his overtime income, by failing to deduct his expenditures for the children's health insurance, and by understating the number of days the children spend with Randy under the parenting plan.

¶10   **A. Overtime**

¶11   Randy became employed as a motorhand on a drilling rig a couple months before trial.  He has an unusual schedule in which he normally works 12 hours a day for seven days straight (a total of 84 hours), followed by seven days off.  Testimony established that he was paid, at the time of trial, $23.50 per hour for the first 40 hours of work, and paid at an overtime rate for the additional hours.  At the close of trial, the District Court stated that it considered Randy's job as "an 84 hours every two weeks job . . . .  So he gets paid for 84 hours every two weeks so he has only really *four hours of overtime* in the average pay that he gets for that time." (Emphasis added.)  To calculate Randy's annual income, the court calculated an average daily wage (inclusive of overtime hours and both regular and overtime pay rates), multiplied that daily wage by 365 to determine an annual total, and then deducted 5% for the four hours of overtime it concluded Randy worked in

4

each pay period. The court determined Randy's annual income at $63,000 for purposes of his child support obligation.[1]

¶12 "In determining child support obligations, a district court must follow the Child Support Guidelines (Guidelines) unless clear and convincing evidence is produced demonstrating that the application of the standards and guidelines is unjust to the child" or parties, or is inappropriate. *Albrecht*, ¶ 11 (citing § 40-4-204(3)(a), MCA). The court must determine the parties' income to set child support. *In re Marriage of Tipton*, 2010 MT 144, ¶ 15, 357 Mont. 1, 239 P.3d 116. Income is defined by the Guidelines as inclusive of "'actual income, imputed income, or any combination thereof which fairly reflects'" a parent's available resources for child support. *Tipton*, ¶ 15 (quoting Admin. R. M. 37.62.106(1)). Actual income comprises "economic benefit from whatever source derived . . . and includes but is not limited to income from salaries, wages, tips, commissions, bonuses, earnings, profits . . . ." Admin. R. M. 37.62.106(2)(a). "[A] district court must be realistic and take the actual situation of the parties into account when calculating child support obligations. The end sought is equity and accuracy in determining income of the party charged with child support obligations, while serving the best interests of the child[ren]." *Albrecht*, ¶ 12 (internal citation omitted).

---

[1] Randy contends that the District Court "recognize[d] that overtime income should not be included in income for child support" because the District Court "deducted 5% of Randy's gross income because it was from overtime." We disagree. The District Court deducted 5% from Randy's gross income based on its conclusion that only 5% of the total "overtime" was actual overtime, not because it was implicitly recognizing that all overtime should be excluded.

¶13 In support of his argument that the District Court erred by including his overtime income, Randy cites Admin. R. M. 37.62.106(5), which states:

> (5) In determination of a parent's income for child support, income attributable to subsequent spouses, domestic associates and other persons who are part of the parent's household is not considered. *If a person with a subsequent family has income from overtime or a second job, that income is presumed to be for the use of the subsequent family, and is not included in income for child support for the purposes of determining support for a prior family.*

(Emphasis added.) Randy asserts that all of his overtime income—any income in excess of the first 40 hours worked each pay period—should be designated for support of his second family and excluded from the calculation of child support for his prior family. Tiffany answers that because Randy's work schedule is unconventional, the District Court properly and fairly calculated Randy's income consistent with the child support guidelines. In response, Randy argues that, even if this Court construes his regular work schedule to be 80 hours every two weeks, the District Court nonetheless erred by using his overtime wage rate for the hours he is paid at that rate, instead of applying his regular hourly rate for all hours in the calculation.

¶14 Admin. R. M. 37.62.106(5) does not define "overtime." Black's Law Dictionary defines overtime as "[t]he hours worked by an employee in excess of a standard day or week" or "[t]he extra wages paid for excess hours worked." *Black's Law Dictionary* 1214 (Bryan A. Garner ed., 9th ed., Thomson Reuters 2009).

¶15 It is clear to us that, while classified as "overtime" for purposes of the hourly pay rate, the hours Randy works in excess of the first 40 in each pay period do not otherwise

6

function as overtime, as that term is commonly used and understood. The additional hours are worked in a single week, followed by a week off, and are properly considered a part of Randy's standard or regular schedule. We thus disagree with Randy's contention that the District Court erred by including *any* of his "overtime" hours. Such a calculation would rest on the incorrect assumption that Randy's regular work schedule is only 40 hours every 2 weeks. That assumption is not supported by the evidence and would result in a drastic reduction in the number of hours worked for purposes of the child support calculation.

¶16 We also disagree with Randy's alternate contention that, even if his work schedule is established as 80 hours every 2 weeks, all 80 hours should be calculated at the regular pay rate instead of the overtime pay rate. Using the regular pay rate for all hours would reduce the calculation of Randy's annual income from $63,000 to approximately $49,000. However, the conclusion that Randy is not working excess hours necessarily requires the conclusion that he is not earning excess wages. The second 40 hours, though paid at the increased rate, are part of Randy's regular pay scheme. Although Admin. R. M. 37.62.106(5) provides that overtime income "is presumed to be for the use of the subsequent family," that presumption was overcome here. The District Court's calculation satisfies the requirement of Admin. R. M. 37.62.106 that "the actual income of a parent fairly reflect the parent's resources available for child support." *In re Marriage of Williams*, 2011 MT 63, ¶ 22, 360 Mont. 46, ___ P.3d ___.

7

¶17    **B. Health Insurance Costs**

¶18    Randy argues that the District Court erred by failing to factor the amount he was ordered to pay for the children's health insurance in the child support calculations. Admin. R. M. 37.62.110(1)(j) states that "[a]llowable deductions from income include . . . (j) court ordered payments," except for exclusions not relevant here. Admin. R. M. 37.62.123 provides: "(1) The primary child support allowance is supplemented by . . . (b) costs required for health insurance coverage for the children . . . . Include only those amounts which reflect the actual costs of covering the children . . . . (3) Each parent will receive credit for the amount of the supplemental needs paid by that parent." As we have explained, "[p]ursuant to the mandatory language of § 37.62.123(3), ARM, once a court determines that each parent is responsible for any portion" of supplemental needs such as health insurance costs, "it is required to credit each parent for those costs accordingly." *Martinich-Buhl*, ¶ 20; *accord In re Marriage of Frick*, 2011 MT 41, ¶ 40, 359 Mont. 296, 249 P.3d 67. However, where a child's health insurance costs are not provided by the parent at the time of the proceeding, the district court does not abuse its discretion by failing to attribute credit to the parent for such insurance costs. *See In re Marriage of Hogstad*, 275 Mont. 489, 500, 914 P.2d 584, 591 (1996); *Frick*, ¶ 40.

¶19    Randy testified that the children were signed up for health insurance and "should be covered to date," since he had just completed the probationary period for new employees to become eligible for benefits. However, the record indicates he was unsure of the cost of the children's coverage because he had not received his first pay stub

8

denoting that cost. In closing argument, Randy's attorney noted that health insurance costs were "coming, we just don't know how much it is because it just started." The court ordered Randy to cover the cost, both orally at the close of trial and, as stated in the decree: "Father shall maintain satisfactory health insurance for the benefit of the minor children, provided it remains available through his employment or at reasonable cost." After trial, but before the formal decree was issued, Randy's attorney submitted the cost documentation as well as filing his objections to the order proposed by Tiffany's attorney.

¶20 We conclude that the District Court erred by failing to factor the cost of the children's health insurance paid by Randy in calculating his child support obligation, as required by the child support regulations. Therefore, we reverse and remand for a recalculation of Randy's support obligation.[2]

---

[2] We disagree with Tiffany's argument that Randy did not request the District Court to "hold the record open to enter this additional information" which she asserts "cannot be raised for the first time on appeal." This issue was raised at trial and Randy's attorney advised the court the cost evidence would be provided, which was done in post-hearing submissions. After the briefing was completed in this appeal, we decided *Frick*, holding there that the district court did not err by excluding the cost of medical insurance from a mother's child support calculation. *Frick*, ¶ 38. However, no actual costs for insurance had been incurred by the mother at the time of trial and the evidence was unclear regarding factors such as the actual costs, the commencement of the obligation and whether the mother's return to school would change the mother's employment situation and future prospects for the child's insurance coverage. *Frick*, ¶¶ 38, 41. We stated that "[w]here the record . . . fails to show that actual insurance costs are being paid by the parent, the district court does not abuse its discretion by failing to apply credit for such costs." *Frick*, ¶ 40 (citing *Hogstad*, 275 Mont. at 500, 914 P.2d at 591). Here, there was trial testimony and post-trial documentation addressing these issues.

¶21 **C. Randy's Time with the Children**

¶22 Randy contends the District Court erred by understating the number of days the three children are with him, in violation of the calculations in Admin. R. M. 37.62.138(3). Given his work schedule, Randy has the children 5 days during each week he is not working, or 10 days in every 28-day period. Using this calculation, Randy argues he should be credited with having the children for at least 130 days a year, even before adding in holidays, and that the District Court's calculation of 126 days per year is erroneous. However, we agree with Tiffany that the District Court's order clearly articulated that Randy has the children for up to 10 days each month, and not every 28 days. The Permanent Parenting Plan articulated that Randy "shall have the right to parent his children during his days off from Work, up to 10 days *per month* . . . ." (Emphasis added.) Randy was properly credited with 126 days with the children annually.

¶23 *II. Did the District Court err by ordering Randy to reimburse Tiffany for her attorney fees?*

¶24 Randy argues the District Court erred when it ordered him to pay $2,500 toward Tiffany's attorney fees, arguing that there was no credible evidence as to the reasonableness of such fees and that the District Court failed to conduct the required hearing on attorney fees.[3] Tiffany responds there was substantial credible evidence to support the award, and Randy declined the opportunity to have a supplemental hearing.

---

[3] Randy briefly states that he did not have the financial ability to pay Tiffany's attorney fees, but he does not develop that argument and, therefore, we do not address it. M. R. App. P. 12(1)(f); *State v. Sartain*, 2010 MT 213, ¶ 27 n.2, 357 Mont. 483, 241 P.3d 1032.

¶25 "A district court may order a party to pay the other party's reasonable attorney fees incurred in maintaining and defending a dissolution proceeding after considering the financial resources of both parties." *In re Marriage of Fishbaugh*, 2002 MT 175, ¶ 31, 310 Mont. 519, 52 P.3d 395 (citing § 40-4-110(1), MCA). The statute's purpose "is to ensure that both parties have timely and equitable access to marital financial resources for costs incurred before, during, and after" such proceedings. Section 40-4-110(2), MCA. An award of attorney fees pursuant to § 40-4-110, MCA, "must be reasonable, necessary, and based on competent evidence." *Harkin*, ¶ 72 (citation omitted). Randy does not contest the necessity of the fees but argues the fees were not reasonable and not based on competent evidence, citing *Dennison*.

¶26 However, this case is not like *Dennison* and *Harkin*, wherein we reversed fee awards which lacked evidence to support the amount granted. *See Dennison*, ¶ 25; *Harkin*, ¶¶ 73, 77. Tiffany testified that she had paid $2,500 to her attorney for an initial retainer, that she had an outstanding bill of approximately $986, and that her attorney had estimated she would owe $2,000 at the end of trial. Noting in the decree that Randy earned $63,000 annually and Tiffany earned $10,009, the District Court ordered that, "based upon the respective earnings of the parties" Randy was to reimburse Tiffany for half of her attorney fees. While the evidence was not extensive, we conclude it was sufficient to support the award.

¶27 Lastly, Randy argues the District Court erred by failing to conduct a hearing regarding fees. "[W]e have stated that the district court must conduct a hearing allowing

11

for 'oral testimony, the introduction of exhibits, and an opportunity to cross-examine in which the reasonableness of the attorney fees claimed is demonstrated.'" *Harkin*, ¶ 72 (citations omitted). However, the manner in which this issue was addressed by the District Court, Randy's attorney (Mr. Carter) and Tiffany's attorney (Mr. Chapman) is relevant. After the District Court stated "over the next year [Randy] would have the ability to come up with half of [Tiffany's] attorney fees," this exchange occurred:

> **MR. CARTER:** How much is that?
> **THE COURT:** It was the 2500, the 900, and whatever that number -- I've got it here.
> **MR. CHAPMAN:** 956, your Honor.
> **THE COURT:** 956 and the 2000 as the estimate for trial.
> **MR. CHAPMAN:** So he pays that directly to me, your Honor?
> **MR. CARTER:** Well, how do we -- but, Judge, that's just estimates. How do we know what he -- so how is he supposed to pay a number?
> **THE COURT:** *Well, do you want to wait and we could have -- do you want to wait until he bills it and then look at it and decide if you want to argue over the part that constitutes the 2000 and the others?*
> **MR. CARTER:** I want a number.
> **THE COURT:** You want a number?
> **MR. CARTER:** $2500?
> **THE COURT:** $2500.
> **MR. CHAPMAN:** He pays that directly to me, your Honor?
> **THE COURT:** He's going to pay it to her and she'll pay it to you over the next year. I think I've got all the points covered. You'll draft a judgment?
> **MR. CHAPMAN:** I will, your Honor.
> **THE COURT:** And the parenting plan?
> **MR. CHAPMAN:** Correct, your Honor.

¶28     (Emphasis added.) The transcript indicates that the District Court had determined the basic amounts for the award, but offered Randy the opportunity for a hearing on the issue. Randy's counsel declined, asked for a specific number to be set, and then

12

suggested the number himself, which was adopted by the court. "We will not put a district court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which the appellant made no objection." *In re Pedersen*, 261 Mont. 284, 287, 862 P.2d 411, 413 (1993) (citing *In re Marriage of Smith*, 242 Mont. 495, 501, 791 P.2d 1373, 1377 (1990)). We conclude there is no reversible error in failing to conduct a hearing under these circumstances. *See In re Marriage of Olson*, 2005 MT 57, ¶ 21, 326 Mont. 224, 108 P.3d 493.

¶29 We affirm in part, reverse in part, and remand for a recalculation of Randy's child support obligation, as set forth herein.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS