

DA 13-0419

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 42

IN RE THE MARRIAGE OF:

DENNIS CROWLEY,

        Petitioner and Appellant,

    and

AMBER CROWLEY,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DR-11-35
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Mark A. Vucurovich, Attorney at Law, Butte, Montana

    For Appellee:

        Lori A. Harshbarger, Attorney at Law, Whitehall, Montana

Submitted on Briefs:  January 8, 2014
Decided:  February 18, 2014

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Dennis Crowley appeals the final decree of dissolution and parenting plan entered by the Second Judicial District Court, Silver Bow County. He claims that the District Court erred in:

¶2 *1. Calculating and distributing the marital estate;*

¶3 *2. Awarding arrears for purported past due family support;*

¶4 *3. Awarding maintenance;*

¶5 *4. Designating Amber as the primary residential parent and failing to award him adequate parenting time; and*

¶6 *5. Awarding costs and attorney's fees.*

¶7 We affirm in part and reverse and remand in part.

## PROCEDURAL AND FACTUAL BACKGROUND

¶8 Dennis and Amber Crowley married in July 2007 and had one child in 2008. Dennis filed a petition for dissolution in the District Court on February 18, 2011. The parties filed a stipulated interim parenting plan on February 25, 2011, that called for all parenting to take place at the parties' home in Butte; during scheduled parenting time, the other parent would switch residences. Following the separation, Amber moved to Coeur d'Alene, Idaho, and commuted to Butte every other week to fulfill her parenting obligations. On March 9, 2011, Amber petitioned the court for a modification to the parenting plan and $2,000 in monthly interim maintenance. The District Court never ruled on the motion for temporary support.

2

¶9      The District Court appointed a guardian ad litem (GAL) on March 25, 2011. Following the completion of the GAL's report, Amber again filed a motion to modify the interim parenting plan. Amber argued, and the GAL agreed, that the parties' interim plan was not a realistic long-term co-parenting solution. Additionally, Amber contended that commuting was interfering with her ability to obtain employment in Coeur d'Alene. The District Court held a hearing and, based on the concerns raised by Amber and the GAL, ordered a modified parenting plan on February 6, 2012. This plan scheduled two weeks of rotating parenting time at each parent's respective residence.

¶10     In November 2012, the District Court held a two-day trial on the petition for dissolution. On May 24, 2013, the court entered its findings of fact, conclusions of law, final decree of dissolution, and final parenting plan. Because Dennis challenges many of the trial court's determinations, we provide a review of the pertinent facts underlying the court's decision.

        *A.      Property Division*

¶11     The District Court divided the marital estate as follows:

¶12     *1. Stage Coach Property*, the parties' primary residence valued between $320,000 and $337,000. Dennis and Amber purchased a lot for $42,400 with a loan from Dennis's mother for $41,534. The court found that Dennis executed a promissory note with his mother to which Amber was not a party. The parties constructed the home on the lot with a $250,000 loan. The court ordered that the home be sold at fair market value and the equity be split equally between the parties. The court ordered that Dennis was to be fully responsible for any obligation to his mother relating to the promissory note.

3

¶13 2. *Fairmont Property*, a vacation home purchased for $40,000 during the course of the parties' marriage. The parties financed the property using funds from a joint bank account and a $30,000 mortgage with Granite Mountain Bank. The court ordered this property to be sold at fair market value with the equity, which the court estimated to be $10,000, to be split equally between the parties.

¶14 3. *Businesses*. Dennis was involved with his family members in several businesses. Amber claimed an ownership interest in one business, Crowley Design Group, where she worked part-time. The court awarded Dennis all interest in and any debt associated with the businesses. It determined that Amber had been an employee of Crowley Design Group, for which she had been compensated.

¶15 4. *Retirement Accounts*. Dennis and Amber both had 401(k) accounts. The court found that Amber's 401(k) was worth $12,000, and that Dennis's 401(k) increased in value during the marriage by $84,000. Additionally, the court found that Dennis "took out a $50,000 loan against his 401(k) retirement account." The court awarded Amber the balance of her retirement account and $36,000 of Dennis's to offset the difference between the growth of their accounts during the marriage.

¶16 5. *Automobile*. The parties purchased a 2005 Mercedes Benz during the marriage that Amber primarily used. The court found the vehicle to be valued at $12,000, with the parties owing $9,000 on a vehicle loan, which Dennis had been paying since the separation. The court awarded the vehicle to Amber and ordered Dennis to continue to make the remaining loan payments.

4

¶17 *6. Credit Cards.* The parties incurred $33,325 of debt among various credit cards. The court assigned Dennis $20,370 of the debt and Amber $12,955.

¶18 *7. Other Property.* The court ordered that the parties split their personal property with 60% going to Amber and 40% to Dennis.

B. *Arrears and Maintenance*

¶19 As noted, Amber filed a motion for temporary maintenance on March 9, 2011, on which the court never issued a ruling. The parties entered into an informal agreement for temporary maintenance in April 2011 in which Dennis agreed to pay Amber $1,100 a month. In February 2012, he reduced that amount to $275 per month without Amber's agreement. At trial, Amber requested the difference between these amounts—$825 a month—going back to February 2012. The District Court ordered Dennis to pay Amber $13,200 for past due family support. The court further ordered $1,100 per month in maintenance for two years.

¶20 In support of these awards, the court found that until the parties separated, Amber worked as a part-time employee at Crowley Design Group, earning $550 every two weeks. The court determined that her part-time employment status during the marriage allowed her to devote time to maintaining the parties' home and to caring for their child. In addition to not being able to secure employment during the first year of the parties' separation, she incurred significant expenses traveling between Idaho and Montana to fulfill her parenting time. At the time of trial, Amber recently had obtained a real estate license and had homes listed for sale with one potential sale pending. The court found

5

her monthly income to be between $2,000 and $2,500 and stated that she had a difficult time meeting her expenses during the proceedings.

### C.    *Parenting Plan*

¶21    Both parents wanted to be the primary parent and agreed that, given the distance between them, a primary parent must be designated.  At trial, each party called a parenting counselor. Each testified that the parent on whose behalf the counselor testified was fit and able.  Both expressed concern with the amount of travel occurring under the interim parenting plan and believed it to be in the best interest of the child to have more stability in her life by having a primary residence.  After hearing the testimony presented from the counselors and the parents, the court found that both Dennis and Amber would be fit and able parents.  The court found that it would be in the best interest of the child to reside primarily with Amber and designated her as the primary residential parent.  The court stated in its findings and final decree that Dennis shall receive "reasonable and liberal rights of parenting."

¶22    In the final parenting plan, the court adopted a residential schedule granting Dennis nine days of parenting a month until the child begins kindergarten, at which point the child is to spend one weekend per month with Dennis.  During summer vacation, the child shall reside with Dennis for one-half of the summer.  The court included a provision in the final parenting plan referring to its Local Rule 23 that could be looked to for further guidance on residential schedules.

D.     *D. Attorney's Fees and Costs*

¶23    The court ordered Dennis to pay Amber $22,000 for reasonable costs and attorney's fees.  The court relied on the same findings that it used to support its award of maintenance—namely that Amber had difficulty securing full-time employment and providing for herself during the proceedings.  At trial, Amber estimated that she would owe $22,000 in attorney's fees.

## STANDARD OF REVIEW

¶24    We review a district court's findings of fact in a dissolution proceeding to determine if they are clearly erroneous.  *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, 107 P.3d 488.  A finding of fact is clearly erroneous "if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the record convinces us that the district court made a mistake."  *Bock*, ¶ 14 (internal citation omitted).  A court's findings must be complete enough that we need not "succumb to speculation when assessing the conscientiousness or reasonableness of the district court's judgment."  *In re Marriage of Bartsch*, 2007 MT 136, ¶ 33, 337 Mont. 386, 162 P.3d 72.  We address further applicable standards of review under each issue.

## DISCUSSION

¶25    *1. Whether the District Court erred in its calculation and division of the marital estate.*

¶26    Section 40-4-202(1), MCA, requires the court to "equitably apportion" the property in the marital estate.  To do so, the court "must determine and consider the assets and liabilities of each of the parties."  *In re Marriage of Funk*, 2012 MT 14, ¶ 24,

7

363 Mont. 352, 270 P.3d 39. A district court does not need to make a specific finding of the net worth of the marital estate; instead, the court must make findings sufficient for this Court to determine the net worth and review whether the marital distribution is equitable. *In re Marriage of Lewton*, 2012 MT 114, ¶ 15, 365 Mont. 152, 281 P.3d 181. District courts are vested with broad discretion in apportioning a marital estate. "Absent clearly erroneous findings, we will affirm a district court's division of property . . . unless we identify an abuse of discretion." *In re Funk*, ¶ 6. Findings must be sufficient, however, to permit review without speculation into a district court's reasoning. *In re Bartsch*, ¶ 33.

¶27 Dennis makes several objections to the District Court's division of the marital estate. He asserts that the court failed to properly calculate the net worth of the estate by not making sufficient findings and leaving certain items out of the calculation. Then, Dennis contends, even if the District Court made a proper net worth determination, its distribution is clearly erroneous because several of the court's findings are not supported by substantial evidence. We address Dennis's objections in turn.

> a. *Whether the court considered the $41,534 loan from Dennis's mother to be a debt of the marital estate or Dennis's separate debt.*

¶28 We disagree with Dennis that the court's disposition of the loan from Dennis's mother is unclear. The District Court expressly found that Dennis executed the loan with his mother without Amber's knowledge and concluded that Dennis alone is responsible for the obligation. Nonetheless, the loan proceeds were used to purchase the marital

8

home and the District Court's decree does not indicate whether it was a marital debt, a necessary finding in the court's determination of an equitable distribution of the estate.

   b.   *Whether the court properly considered the $10,000 equity in the Fairmont Property as part of the marital estate.*

¶29   Dennis contends that the court clearly erred in determining that the Fairmont property had $10,000 in marital equity because the evidence shows that the $10,000 down payment for the property was made with his own, separate funds. We have made clear that "*everything* owned jointly or by either party must be equitably apportioned by the district court in a dissolution proceeding regardless of when or how it was acquired." *In re Funk*, ¶ 13 (emphasis in original). If property is acquired during the marriage, it is part of the marital estate regardless of who owns it. *Funk*, ¶ 19.

¶30   The record is clear that the $10,000 came from a joint bank account nearly a year into the marriage. Dennis argues that this $10,000 constitutes his premarital property, but he supports this by stating only that Amber did not bring any income into the marriage. Dennis failed to present evidence at trial that this $10,000 was acquired prior to the marriage, and has not demonstrated on appeal why the equity should not be considered in apportioning the property. *See Funk*, ¶ 19. The District Court did not err in dividing the equity in the Fairmont Property without giving Dennis credit for the $10,000 down payment.

   c.   *Whether the court considered the $50,000 loan against Dennis's 401(k) as part of the account's increased value.*

¶31   We agree with Dennis that the court's disposition of the $50,000 loan against Dennis's 401(k) is unclear. The court found that Dennis took out a $50,000 loan against

his account, but made no further finding pertaining to the loan. When awarding Amber half of the increased value of Dennis's 401(k), the court appears to have included the $50,000 as part of the 401(k)'s value. Amber argues that Court's disposition is clear because the $50,000 loan financed a business awarded solely to Dennis. Dennis contends that the District Court failed to consider the $50,000 as a marital debt by including that amount as part of the assets awarded to Amber. When dividing the marital estate, the court must consider the entire marital estate—including debt. *In re Marriage of Rudolf*, 2007 MT 178, ¶ 23, 338 Mont. 226, 164 P.3d 907. The District Court's findings do not explain its treatment of the $50,000.

> d. *Whether there was a net worth assigned to Dennis's interest in the five businesses the court awarded him.*

¶32 Dennis argues that the District Court's findings did not include any valuation of the five businesses awarded to him. He claims that they have a net negative value not given proper consideration in the court's determination of assets and liabilities. The court noted only that, except for Crowley Design Group, Amber did not claim an interest in the businesses. The court awarded all the businesses to Dennis, along with any associated debt. Section 40-4-202, MCA, requires a district court to apportion all assets and property of either or both spouses. *In re Funk*, ¶ 19. The court did not list or provide a comparison of the assets awarded and liabilities assigned to each party and we are unable to divine from its findings a figure that would represent the appropriate net worth of the marital estate. As such, the findings would require us to speculate as to the reasonableness of the District Court's judgment. "It [is] incumbent upon the court to

10

consider the assets and liabilities of each of the parties and to enter property-specific findings of fact underlying the apportionment." *In re Funk*, ¶ 34.

> *e. Whether the court considered the $32,000 Dennis paid against the parties' marital debt throughout the proceedings.*

¶33 Finally, Dennis argues that the court failed to include approximately $32,000 Dennis claimed to have paid to service the parties' debt during the two years the proceedings were pending. He cites *In re Marriage of Dowd*, 261 Mont. 319, 862 P.2d 1123 (1993) for the proposition that the court must consider his payments because they preserved the marital estate. *Dowd* is inapplicable on the facts. There, the court found that a wife, who made significantly less than her husband, was "unilaterally responsible for keeping the marital estate intact," and gave her credit for that obligation. *In re Dowd*, 261 Mont. at 324, 862 P.2d at 1126. The court found in this case that Amber made considerably less income than Dennis and had difficulty securing another job following the separation. Except for the shared parenting arrangement the parties followed initially, Dennis continued to reside in the family home throughout the pendency of the proceedings and had exclusive control of the parties' marital assets. We agree with Amber that the court need not expressly allocate credit for all of Dennis's payments during the parties' separation so long as its distribution of the marital estate is equitable; nonetheless, in this case the court's findings of fact do not even mention the payments or how it factored them into its distribution of assets and liabilities. To the extent Dennis's payments enhanced or protected the marital estate or reduced the parties' marital debt, he should be given credit in the equitable apportionment of the estate.

11

*f. Conclusion*

¶34 Although the District Court is not required to make a specific finding of the marital estate's net worth, we agree with Dennis that the court's findings are insufficient for us to determine whether the court properly considered all of the parties' assets and liabilities. Without such findings, we are unable to determine whether the court equitably distributed the marital estate. Accordingly, we reverse the court's apportionment of property and remand for further findings of fact pertaining to the loan from Dennis's mother, the loan against Dennis's 401(k), the valuation of Dennis's businesses, and the debt service payments. The District Court shall consider each of the factors in § 40-4-202, MCA, and determine an equitable apportionment of property and debt on the basis of its findings of fact.

¶35 *2. Whether the District Court erred in its award of arrears for purported past due family support.*

¶36 Dennis argues that the District Court's award for past due family support is not authorized by law. Dennis cites our decision in *Rudolf*, where we determined that § 40-4-203, MCA, did not allow the court to award maintenance retroactive to three years before the petition for dissolution was even filed. *In re Rudolf*, ¶ 41. We recognized, however, that "[t]here is statutory authority for a district court to award temporary maintenance retroactive to the time a petition for such is filed." *In re Rudolf*, ¶ 39 (citing § 40-4-121(1), MCA). Section 40-4-121(1), MCA, states, "At any time during the proceedings, the court may order any temporary family support payments to be

12

designated as temporary maintenance . . . retroactive to the date of the motion for a temporary family support order."

¶37 As noted, the court did not rule on Amber's March 9, 2011, motion for temporary maintenance. Meanwhile, the parties entered into an informal agreement for temporary maintenance. A year into the arrangement, Dennis unilaterally reduced the support to $275 per month. At trial, Amber requested the amount that Dennis failed to pay under their informal agreement. The court's $13,200 award accounts for the difference between what Amber contends Dennis agreed to pay and what he did pay, going back to when he began making reduced payments in February 2012.

¶38 Dennis argues that because the court never ruled on Amber's motion for temporary maintenance, it was deemed denied pursuant to Rule 19(A) of the Local Rules for the Second Judicial District. Rule 19(A) of the local rules provides that a motion not ruled upon within forty-five days of the date the motion was filed is deemed denied; Dennis fails to show, however, how the local rule abrogates the District Court's statutory authority to award temporary maintenance retroactive to the date of the motion "at any time during the proceeding." Section 40-4-121(1), MCA.

¶39 Finally, Dennis fails to demonstrate that the District Court's findings of fact are clearly erroneous. The court found that Amber earned $1,100 a month prior to the parties' separation, that she was unable to maintain full-time employment during the first year of their separation after she stopped working at the Crowley family's business, and that she incurred significant expenses traveling between Idaho and Montana to fulfill her parenting time. Because Amber filed a motion requesting interim maintenance and the

13

evidence supports her need for the funds during the proceedings, the District Court did not err in awarding Amber $13,200 in past due support.

¶40   *3. Whether the District Court erred in its award of maintenance.*

¶41   Dennis next argues that the court improperly awarded prospective maintenance because it did not adequately address the statutory factors. Although an award of maintenance is discretionary, a district court may not order it without first making the findings required under § 40-4-203(1), MCA. *In re Marriage of Crilly*, 2005 MT 311, ¶ 29, 329 Mont. 479, 124 P.3d 1151. Section 40-4-203(1), MCA, states that a court may grant an order for maintenance only if it finds that the spouse seeking maintenance: "(a) lacks sufficient property to provide for the spouse's reasonable needs; and (b) is unable to be self-supporting through appropriate employment . . . . " Section 40-4-203(2), MCA, states that the order must be in amounts and for periods of time that the court considers just, without regard to marital misconduct, and after considering all relevant facts, including:

> (a)   the financial resources of the party seeking maintenance, including marital property apportioned to that party, and the party's ability to meet the party's needs independently . . . ;
> (b)   the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
> (c)   the standard of living established during the marriage;
> (d)   the duration of the marriage;
> (e)   the age and the physical and emotional condition of the spouse seeking maintenance; and
> (f)   the ability of the spouse from whom maintenance is sought to meet the spouse's own needs while meeting those of the spouse seeking maintenance.

14

¶42 Here, the District Court made several findings regarding Amber's ability to provide for herself and to maintain employment. The court found that it had been difficult for Amber to meet her expenses during the proceedings, but did not address whether she lacks sufficient property or employment to provide for her needs after accounting for the amount of the marital property awarded to Amber by the final decree. We are unable to determine from the District Court's brief findings whether the court properly awarded maintenance under the relevant factors listed in § 40-4-203(2), MCA, as its findings did not address these factors specifically. Additionally, because the court's apportionment of property may be affected by the additional consideration we have directed in this Opinion, we reverse the District Court's maintenance order and remand for the court to make further findings consistent with the statute.

¶43 *4. Whether the District Court erred in its designation of Amber as the primary residential parent or failing to award Dennis adequate parenting time.*

¶44 We review an award of child custody to determine if the court's findings are clearly erroneous. *In re Marriage of Dennison*, 2006 MT 56, ¶ 13, 331 Mont. 315, 132 P.3d 535. When the findings are supported by substantial credible evidence, we will affirm the court's decision unless a clear abuse of discretion is shown. *In re Marriage of Epperson*, 2005 MT 46, ¶ 17, 326 Mont. 142, 107 P.3d 1268. Trial courts have broad discretion when considering the parenting of a child, and we must presume that the court carefully considered the evidence and made the correct decision. *In re Marriage of Tumarello*, 2012 MT 18, ¶ 34, 363 Mont. 387, 270 P.3d 28.

15

¶45 Dennis first argues that the court failed to make findings demonstrating that the court considered all relevant parenting factors in determining what parenting arrangement is in the best interests of the child as required by § 40-4-212(1), MCA. Section 40-4-212(1), MCA, includes a nonexhaustive list of factors for the court to consider, including the wishes of the parties; the interaction with the child and each parent; the child's adjustment to home, school, and community; stability of care; and the developmental needs of the child. It is not mandatory that a district court's order contain specific findings on each of the listed factors, but a court's findings must "express the essential and determining facts upon which it rests its conclusions." *In re Epperson*, ¶ 30 (internal citation omitted).

¶46 Here, the District Court included sufficient findings to support its designation of Amber as the primary residential parent. The court's findings pertaining to custody demonstrate that the court considered the statutory factors. The court found that both Dennis and Amber "are fit and able parents that care deeply about the best interests, well-being, and development of the minor child. Furthermore, the Court finds both parties have the support of friends and family in their respective communities." Like many child custody cases, the parties' circumstances required the court to make difficult choices. The witnesses established that both parents would make fit and able parents and agreed that it would be in the child's best interest to be placed primarily with one parent in order to be subjected to less traveling time between Montana and Idaho. The court needed to select a primary residential parent and it did so.

¶47 The court's findings demonstrate that, prior to the parties' separation, Amber worked part-time because she was primarily responsible for raising the parties' child. Several witnesses at trial testified to Amber's role as the child's primary caregiver. Findings of fact not specifically made may be implied, as long as they are not inconsistent with express findings, when necessary to the judgment and supported by the evidence. *Caplis v. Caplis*, 2004 MT 145, ¶ 32, 321 Mont. 450, 91 P.3d 1282. Though minimal, the findings of fact—both express and implied—support the District Court's determination to award primary residential custody to Amber. Dennis does not bring forth an argument that the court's findings of fact are clearly erroneous. Absent such evidence, the District Court did not abuse its discretion in designating Amber the primary residential parent of the parties' child.

¶48 Dennis next contends that the District Court's decree conflicts with the final parenting plan it entered. While the decree states that Dennis should receive liberal parenting time, Dennis argues that his allocated parenting time does not even meet the minimum standard of the Second Judicial District Court's Local Rule 23. When parents reside more than 200 miles apart, the local rule calls for the child to spend all but three weeks of the school summer vacation with the non-primary parent. Dennis points out that the time allocated to him during the summer is less than this amount.

¶49 Local Rule 23 establishes parenting plan guidelines intended to be "only a general direction for parents," and "not compulsory rules." The District Court reserves the right to "set whatever parenting plan meets the needs of the children in that case," regardless of the local rule's guidelines. There is, however, lack of clarity between the court's findings

17

and the allocated parenting time in the final parenting plan. The District Court found that "[i]t is in the best interest of the child to spend the most time possible with each parent" and that Dennis should receive "reasonable and liberal rights of parenting." The court does not explain how its award of one weekend per month and one-half of the summer in the final parenting plan achieves these objectives. On remand, the District Court is directed to enter additional findings regarding its allocation of parenting time between the parties.

¶50    5. *Whether the District Court erred in its award of costs and attorney's fees.*

¶51    Dennis argues that the District Court incorrectly awarded attorney's fees and costs because it did not hold a hearing regarding the reasonableness of the fee claimed. An award for attorney's fees in a dissolution proceeding is reviewed for abuse of discretion. *In re Marriage of Caras*, 2012 MT 25, ¶ 18, 364 Mont. 32, 270 P.3d 48. "A district court has abused its discretion if substantial evidence does not support its award of attorney's fees." *In re Dennison*, ¶ 23.

¶52    Section 40-4-110, MCA, authorizes an award of attorney's fees and costs in a dissolution proceeding. An award under this statute must be "reasonable, necessary, and based on competent evidence." *In re Marriage of Harkin*, 2000 MT 105, ¶ 72, 299 Mont. 298, 999 P.2d 969. A district court must conduct a hearing allowing for "oral testimony, the introduction of exhibits, and an opportunity to cross-examine in which the reasonableness of the attorney fees claimed is demonstrated." *In re Harkin*, ¶ 73 (internal citations omitted).

18

¶53 Amber argues that she presented testimony regarding the reasonableness of attorney's fees during the trial. Citing *Caras*, she contends that there is no requirement for a separate hearing on the reasonableness of a fee award when trial testimony estimates the amount owed to an attorney by the end of trial. In *Caras*, however, we considered only the necessity of an attorney's fee award, not the reasonableness of the fees awarded. *Caras*, ¶ 49. Although we have upheld the reasonableness of attorney's fees in the absence of a hearing, we concluded that the party ordered to pay the fees specifically declined a hearing and in fact suggested the amount of attorney's fees the court ultimately ordered him to pay. *In re Marriage of Stevens*, 2011 MT 106, ¶¶ 27-28, 360 Mont. 344, 253 P.3d 877.

¶54 Here, the only evidence indicating the reasonableness of the fees is Amber's estimate that she would owe her attorney $22,000 by the end of trial. Amber did not submit any supporting documentation or other evidence to demonstrate the reasonableness of this figure. Amber's testimony alone is not sufficient to support a determination that the fees requested were reasonable. We reverse the District Court's order requiring Dennis to pay $22,000 in costs and attorney's fees and remand for further consideration.

## CONCLUSION

¶55 We affirm the District Court's award of past due family support and its designation of Amber as the primary residential parent. We reverse the court's order on apportionment of property and debt, its award of ongoing maintenance to Amber, its parenting schedule for Dennis, and its award of attorney's fees to Amber. We remand for

additional findings of fact on the value of the marital estate, the maintenance award, and the parenting plan; for entry of conclusions of law and an amended final decree on the basis of those findings; and for the court to conduct further proceedings to determine the reasonableness of Amber's requested fees.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE