
DA 13-0675

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 213

IN RE THE MARRIAGE OF:

DIANNA M. RICHARDS,

      Petitioner and Appellee,

   and

MARK L. RICHARDS,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 08-1342
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Elizabeth J. Honaker, Honaker Law Firm, Billings, Montana

      For Appellee:

          George T. Radovich, Attorney at Law, Billings, Montana

Submitted on Briefs:  May 14, 2014
Decided:  August 5, 2014

Filed:

_____
                   Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Mark Richards appeals the findings of fact, conclusions of law and order entered by the Thirteenth Judicial District Court, Yellowstone County, dissolving his marriage to Dianna Richards and distributing their marital estate.

¶2     Mark raises numerous arguments challenging the court's property distribution. We address each contention under the following two issues:

¶3     *1. Whether the District Court erred in calculating the net worth of the marital estate.*

¶4     *2. Whether the District Court abused its discretion in distributing the marital estate.*

¶5     We reverse portions of the court's calculation of net worth and remand for further findings and a recalculation. We affirm the court's distribution of the marital estate in all other respects.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6     Mark and Dianna married in 1984 and separated in 2007. Dianna filed a petition for dissolution of marriage on December 8, 2008. The District Court held a two-day trial on April 12 and May 2, 2013, issued findings of fact and conclusions of law on June 20, 2013, and issued a decree of dissolution on June 27, 2013.

¶7     When the parties married, Dianna was a registered nurse and Mark was a laborer on his family's farm and ranch. Neither party owned real property or substantial assets. In 1994, the parties bought their first property, Parker Place, with a $10,000 down payment from their combined resources and $65,000 in loans from Mark's relatives. In 1995, Mark's mother deeded him a parcel of land known as the Rushwater Property, where the parties lived until their separation. In January 1999, Dianna inherited a parcel known as Gramma's

2

Place. Over the years they acquired more parcels—Jurovich Place, Peterson Place and Helzer Place—by leveraging their properties and borrowing money. The parties used all of the properties in various ways for the farming operation during the years of their marriage.

¶8 The parties' farm and ranch operated in a fashion typical of a family farm. The Richardses utilized an operating loan for up-front expenses, paying it off annually with income received from the operation. They raised hay to feed the cattle and sold any excess. They raised and sold crops, bred cattle, and either sold the calves or used them to increase the herd. The parties continually acquired and maintained equipment. Following the parties' separation in 2007, Mark continued to operate the farm and ranch in the same manner as before, using the parties' real property, equipment and inventory as needed.

¶9 The parties shared household duties throughout their marriage. Though Mark disputes the amount and character of Dianna's farm labor, he agrees that she assisted with the farming in various capacities, at least until their separation. The parties agree that her farming duties decreased in 2004 when she began working full time as a registered nurse to help pay expenses.

¶10 At trial, the District Court was tasked with determining what to include in the marital estate, the estate's net worth and an equitable division of considerable property, which consisted primarily of farmland, farm equipment, animals and personal effects. To assist in the valuation of the estate, two appraisals were completed and submitted into evidence—Jim Carroll completed an appraisal of the parties' real property in December 2011 and Musser Bros., Inc., completed an appraisal of the parties' equipment and crops in June 2011. The parties stipulated to both appraisals and Carroll testified at trial. Mark presented a financial

3

statement from Yellowstone Bank dated April 1, 2013, and a final financial disclosure dated April 8, 2013. Mark's banker testified at trial.

¶11 During the trial, Mark argued that the value of the Rushwater property should not be included in the marital estate because it was gifted to him by his family. Further, he testified that he would be able to continue farming only if Dianna received no more than two parcels of land. Dianna requested four parcels of land—Gramma's Place, Jurovich Place, Parker Place and Helzer Place—along with an equalization payment of $350,000.

¶12 The District Court issued its findings of fact and conclusions of law on June 20, 2013. Despite the parties' long separation, the District Court calculated the marital estate as of the date of trial, noting that their financial interests had remained intertwined and that "[i]t would be impossible to separate the parties' assets as of any particular date." Utilizing the appraisals, financial statements and testimony from the trial, the court valued the parties' net worth at $3,509,560.86. The District Court rejected Mark's argument that the parties' inherited and gifted property should not be subject to division, noting that after the properties were deeded to the parties, they were merged with and operated as a part of the overall farm and ranch operation. Based on the length of the marriage and the contributions of both parties to build up the value of the farm and ranch operation, the court concluded that it would be equitable to split the parties' net worth equally. The court relied on Mark's testimony that he needed land to continue the farming operation and awarded him all the real property except for Gramma's Place and Jurovich Place. The court also awarded Mark the majority of the income-producing assets, such as equipment and cattle, so that he could continue farming. To account for its award of the majority of the real property and

4

equipment to Mark, the court ordered Mark to pay Dianna $892,663.00 over fifteen years for her remaining portion of the marital estate. The court noted that the ultimate distribution left Mark with a net worth $190,000 greater than Dianna's, but concluded that this was equitable to account for his operation of the farm and ranch following the parties' separation. Mark appeals the court's decree.

## STANDARD OF REVIEW

¶13    We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39. A finding of fact is clearly erroneous "if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us the district court made a mistake." *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, 107 P.3d 488 (internal citation omitted). District courts have broad discretion in apportioning a marital estate. *In re Marriage of Crowley*, 2014 MT 42, ¶ 26, 374 Mont. 48, 318 P.3d 1031. Absent clearly erroneous findings, we will affirm a district court's division of property unless the court abused its discretion. *Crowley*, ¶ 26.

## DISCUSSION

¶14    *1. Whether the District Court erred in calculating the net worth of the marital estate.*

¶15    Section 40-4-202(1), MCA, requires a district court to determine and consider the assets and liabilities of each of the parties before apportioning the marital estate. *Crowley*, ¶ 26. A net valuation by the district court is not always mandatory. *Crowley*, ¶ 26. The test is "whether the findings as a whole are sufficient to determine the net worth and to decide

5

whether the distribution is equitable." *In re Marriage of Lewton*, 2012 MT 114, ¶ 15, 365 Mont. 152, 281 P.3d 181 (internal citations omitted). A district court has broad discretion in determining the value of property in dissolution and is "free to adopt any reasonable valuation of marital property which is supported by the record." *In re Marriage of Robinson*, 269 Mont. 293, 296, 888 P.2d 895, 897 (1994). We have allowed a court to premise its valuation on "expert testimony, lay testimony, documentary evidence, or any combination thereof." *Robinson*, 269 Mont. at 296, 888 P.2d at 897. A court's findings must be complete enough, however, that we need not "succumb to speculation when assessing the conscientiousness or reasonableness of the district court's judgment." *In re Marriage of Bartsch*, 2007 MT 136, ¶ 33, 337 Mont. 386, 162 P.3d 72.

¶16 Here, the District Court utilized the financial statement from Yellowstone Bank as a starting point and supplemented it with information from the stipulated appraisals and the parties' testimony. Mark argues that several of the District Court's findings regarding the valuation of the marital estate are clearly erroneous. He specifically contends that the court double-counted certain improvements to the parties' real property and certain items of farm equipment, erroneously relied on Mark's Yellowstone Bank financial statement, failed to value certain farm items, and erroneously found that the parties made $200,000 in improvements to their home.

*a. Real property calculation*

¶17 Mark's April 1, 2013, Yellowstone Bank financial statement lists the value of the parties' real estate and improvements as $1,611,400. The District Court adjusted this amount based on the Carroll appraisal of real property and testimony from Mark and his banker

6

suggesting that the financial statement value was a conservative estimate. The District Court

added the $1,017,502.50 difference between the Carroll appraisal of $2,628,902.50[1] and the

financial statement's total of $1,611,400 to the overall calculation of net worth. Essentially,

the court utilized the Carroll appraisal of $2,628,902.50 as the calculation of the net worth of

the parties' real property. Mark argues that this calculation results in an artificial inflation of

net worth by including the value of the improvements listed on the financial statement twice.

The financial statement's total of $1,611,400 includes $80,000 in improvements, including a

machine shed, a grain bin and electric scales. Mark argues that this $80,000 also was

included in Carroll's appraisal. Mark misunderstands the effect of the court's calculation.

The court did not add the totals from Carroll's appraisal to Mark's financial statement.

Rather, the court chose to value the real property using the total from Carroll's appraisal

instead of the total from Mark's financial statement. Mark does not allege clear error in the

Carroll appraisal and stipulated to its use. After reviewing the court's findings in

conjunction with the record, we fail to see how this results in a double counting of $80,000

in improvements. We affirm the District Court's calculation of the real property portion of

the parties' net worth.

### b. *Equipment calculation*

¶18     Mark next argues that the District Court erroneously calculated the value of the

parties' equipment by including certain pieces of equipment more than once. The District

---

[1] The District Court's order does not explain where this total appears in the Carroll appraisal. The written appraisal admitted into evidence shows a higher total of $2,918,652. Neither party disputes the accuracy of the Carroll appraisal or the District Court's use of the $2,628,902.50 total. We therefore defer to the District Court's use of the $2,628,902.50 total.

Court utilized the Musser appraisal of equipment, but added the value of equipment acquired subsequent to the parties' separation that was listed on Mark's financial disclosure. Mark contends that the District Court did not consider that the parties separated in 2007 and that the Musser appraisal was performed in 2011. Thus, much of the post-separation equipment listed in the financial disclosure already was included in the Musser appraisal. Having reviewed the two exhibits on which the court relied for this calculation, we agree with Mark that it appears that much of the same equipment was listed in both documents. We agree that the findings regarding the value of the equipment appear to be mistaken. We also agree with Mark that the court failed to address several items of equipment that Mark claimed were owned by others. Although Dianna counters that Mark stipulated to use of the Musser appraisal, the appraisal states that Musser made no investigation of the ownership of the equipment. Accordingly, we reverse and remand for the District Court to conduct a recalculation of the equipment value.

### c. Cash and debts

¶19　Mark argues that the court's reliance on the Yellowstone Bank financial statement for the net worth calculation resulted in the court erroneously including cash that did not exist at the time of trial and excluding several debts that were not reflected in the Yellowstone Bank statement.

¶20　First, Mark challenges the court's inclusion of $31,000 in cash as part of the net worth of the parties. At trial, Mark testified that the $31,000 listed on the financial statement was "long gone," having been used to service the parties' debt, and that his checking account, as of the first day of trial, had a negative balance. There was no contradictory testimony

regarding the cash amount. In the court's adjustments to the financial statement, it did not mention Mark's testimony on this issue. Although the $31,000 is listed on the financial statement, it is dated before trial. Dianna argues that the Court was free to disregard Mark's testimony on this issue and rely solely on the financial statement. Mark presented unconverted testimony that he alone was responsible for paying the farm debts after he and Dianna separated and had used the cash to pay down the debt. With no findings providing insight into the District Court's reasoning for including the $31,000, we conclude that its inclusion of the cash is not supported by substantial evidence. Accordingly, we remand for further factual findings regarding the value of cash as of the time of dissolution.

¶21 Mark next points out that the District Court did not include the remaining balance on the parties' $65,000 loan obligation as part of the net worth. The court found that the parties purchased their first property with a $65,000 loan from Mark's relatives and required Mark to be responsible for all debt on the parties' real property, but it did not address the obligation in its net worth calculation. At trial, Mark testified that there was still a balance of $30,000 on this obligation. Although the District Court has broad discretion in distributing the marital estate, it is required to consider the entire estate, including debt. *Crowley*, ¶ 31; *In re Marriage of Rudolf*, 2007 MT 178, ¶ 23, 338 Mont. 226, 164 P.3d 907. In *Rudolf*, we reversed the district court's distribution of the marital estate because we were left to guess how the district court accounted for certain assets and liabilities that both parties agreed existed. *Rudolf*, ¶ 22. Given the lack of discussion by the District Court, we cannot determine from its findings whether it disregarded this debt. On remand the court should address this loan in its determination of net worth.

9

¶22 In his final financial disclosure, Mark included a $31,515 second mortgage from Wells Fargo that he contends was used to pay off credit card debt accrued by Dianna throughout the marriage. At trial, this loan was discussed by both parties. Dianna acknowledged the existence of the second mortgage but disagreed that it was used to pay off her credit cards. The District Court found that this debt was incurred for the mutual benefit of the parties, but did not include it in the calculation of net worth. Regardless of the purpose of this debt, the court was still required to take the loan into consideration as a liability of the marital estate. *Crowley*, ¶ 31; *Rudolf*, ¶ 23. Given the evidence presented in the final financial disclosure and at trial, we again conclude that the District Court did not include sufficient findings for us to determine whether it erred in its calculation. The court also should consider this debt on remand.

¶23 Mark finally argues that the District Court's use of the financial statement omits a $15,000 loan balance for a piece of farm equipment. Dianna contends that this loan amount was not raised until appeal. Mark counters that it was included in his final financial disclosure, which was used as an exhibit at trial. While this loan is documented in Mark's disclosure, the trial transcript contains no discussion of it. "[P]arties to a dissolution proceeding have a duty to assist the trial court in acquiring information needed to determine an appropriate distribution of marital property." *In re Marriage of Foreman*, 1999 MT 89, ¶ 37, 294 Mont. 181, 979 P.2d 193 (internal citation omitted). Expecting the District Court to go through Mark's lengthy and largely repetitive financial disclosure when Mark did not raise this loan amount at trial is unreasonable. The existence of this loan was not mentioned at trial and we will not fault the District Court for not considering it in its calculation.

### d. Value of farm items awarded to Dianna

¶24 In its award of real property, the District Court awarded Dianna Gramma's Place and Jurovich Place "along with the irrigation pipe typically used on each of these properties." The District Court also awarded Dianna the scrap equipment on the parties' property. Mark argues that the District Court failed to account for the value of these items, contending that the court must assign a value to every asset. We have held that a district court need only make findings sufficient for this Court to determine the net worth and review whether the marital distribution is equitable. *Crowley*, ¶ 26. We will not attempt to review every element of a complex property distribution. *In re Marriage of Kink*, 226 Mont. 313, 317, 735 P.2d 311, 314 (1987). Mark's allegations do not rise to clear error. Except as we have specifically noted above, the court made thorough findings regarding the value of the parties' real estate and equipment based upon sufficient evidence. The court set forth what it believed to be an equitable distribution, including Dianna's retention of the irrigation pipes and scrap equipment. Similarly, the court awarded Mark certain items without listing the exact breakdown of the value attached, such as all equipment and vehicles not awarded to Dianna. Mark does not demonstrate how Dianna's receipt of the farm items on the property she was awarded results in an inequitable distribution. We conclude that the court made sufficient findings for us to determine that this was an equitable division of these items of property.

### e. Improvements to the Rushwater Property

¶25 In its findings regarding the parties' inherited properties, the District Court noted that the Richardses made substantial improvements to the gifted properties, including over

11

$200,000 of improvements to the Rushwater Property. Mark argues that the record does not support the court's valuation of the improvements. He fails, however, to demonstrate how this finding is reflected in the court's ultimate distribution. The court utilized the Carroll property appraisal when setting the value of the real property, and Mark does not allege that the Carroll appraisal erroneously included this $200,000. Instead, it appears that the court made its finding about the improvements in rejecting Mark's argument that the Rushwater Property should not be included in the marital estate for purposes of property division. As we discuss later in the opinion, the court properly included the Rushwater property as part of the marital estate. Regardless of the value of improvements made to the property, this finding is immaterial to the outcome of the issues on appeal and we decline to determine whether the court erred in its valuation of the improvements.

*f. Conclusion*

¶26     We affirm the District Court's valuation of the parties' real property. Because the record indicates that the court incorrectly calculated the value of the parties' equipment and made insufficient findings regarding inclusion of $31,000 in cash and the exclusion of loans from Mark's relatives and Wells Fargo, we reverse its calculation of the parties' net worth. On remand, the District Court shall supplement its factual findings to address these matters and recalculate the parties' total net worth. The District Court may adjust its distribution of property if necessary based on the recalculation. We proceed to address Mark's remaining arguments.

¶27     *2. Whether the District Court abused its discretion in distributing the marital estate.*

¶28 In a dissolution proceeding, a district court is required to "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title to the property and assets is in the name of the husband or wife or both." Section 40-4-202, MCA.

¶29 Mark argues that the District Court abused its discretion in distributing the marital estate by failing to credit him for his labor during the parties' separation, failing to apportion to each of the parties a larger percentage of the value of their respective gifted properties, failing to credit Mark for Dianna's post-separation acquisitions, and failing to consider tax consequences of the equalization payment.

### a. Credit for post-separation labor

¶30 Mark first alleges error in the District Court's refusal to give him credit for operating the farm during the parties' five-year separation. He contends that during this five-year period, he ran the farm and that its net value increased significantly. He argues that because the court did not consider the $310,000 of salary that Dianna made during this time period, it should have credited Mark with $310,000 of the increase of net worth of the assets during the separation.

¶31 Section 40-4-202, MCA, instructs courts to consider a variety of factors when determining an equitable distribution of the marital estate, including the length of the marriage and a spouse's contribution as a homemaker to the family unit. The court need not expressly credit a party for work done or payments made to maintain marital property so long as the court's distribution of the marital estate is equitable. *Crowley*, ¶ 33. A district court should consider the extent to which a party's actions enhanced or protected a marital

13

asset in its equitable apportionment of the estate. *Crowley*, ¶ 33; *In re Marriage of Dowd*, 261 Mont. 319, 324, 862 P.2d 1123, 1126 (1993).

¶32 Here, the District Court recognized that Mark continued operating the farm following the parties' separation. The court credited him for this work by awarding him 53% of the parties' net worth—$190,000 more than Dianna received. It concluded that this was an equitable distribution because he operated the farm and ranch after the separation with little financial or work contributions from Dianna. Nevertheless, the court included in its findings that Mark's continuation of farming operations utilized the parties' jointly acquired assets and their income-producing property, including the land, livestock and equipment. The court determined that although the parties had been separated for five years, "[Dianna's] interest in the real properties, equipment and cattle has not been separated and, therefore, the parties have not existed in a financially separate way." Given Mark's use of the jointly acquired incoming-producing property and his receipt of a larger portion of the estate, we conclude that the District Court did not abuse its discretion by not crediting Mark with an amount equal to the salary made by Dianna during the separation.

   *b. Gifted Property*

¶33 Next, Mark contends that the District Court erred by failing to award the parties a greater portion of the value of the properties gifted to them by their respective families. Section 40-4-202, MCA, requires an equitable distribution of all property belonging to either or both parties, "however and whenever acquired." *Funk*, ¶ 13. The statute directs courts to consider specific factors for pre-acquired, gifted or inherited property, such as the nonmonetary contributions of a homemaker and the extent to which such contributions

facilitated the maintenance of the disputed property. Section 40-4-202, MCA. We have made clear, however, that these considerations do not constrain a district court's discretion to equitably divide all assets of the parties, however and whenever acquired. *Funk*, ¶ 16; *In re Marriage of Caras*, 2012 MT 25, ¶ 33, 364 Mont. 32, 270 P.3d 48; *In re Marriage of Tummarello*, 2012 MT 18, ¶ 25, 363 Mont. 387, 270 P.3d 28.

¶34 Here, the District Court detailed the parties' numerous acquisitions of property from the start of their marriage, finding that they began their marriage with no significant assets and worked jointly to acquire their assets throughout the marriage. Although each party inherited a parcel of land, these parcels were used jointly by the parties for housing, operation of the farm and leverage to acquire more property. The court found that Dianna significantly contributed to the household duties at the parties' residence on the inherited Rushwater property. Although Mark alleges that the District Court should have awarded the parties a greater share of their respective inherited properties, he has not established that its equal distribution of these properties amounts to an abuse of discretion. We conclude that the District Court properly considered the factors listed in § 40-4-202, MCA, for both jointly acquired and inherited assets. We decline to disturb its distribution of the inherited properties.

c. *Financial disclosure of personal property*

¶35 Mark argues that the District Court abused its discretion by not crediting Mark's share of the estate with the amount of Dianna's acquired property. He argues that Dianna did not file a final declaration of disclosure and a current income and expense declaration as required

15

by § 40-4-253, MCA, and that the court failed to assign a value to Dianna's personal property.

¶36 The failure of a party to disclose an asset or liability on the final declaration of disclosure is presumed to be grounds for the court, without taking into account the equitable division of the marital estate, to award the undisclosed asset to the opposing party or the undisclosed liability to the noncomplying party. Section 40-4-253(4), MCA. Because Dianna failed to submit a final financial disclosure, Mark argues that the court erred by not awarding him the value of the undisclosed assets pursuant to this statute. Although the statute allows a district court to award the disputed property, it does not require the court to do so. In this case, neither party complied strictly with the financial disclosure requirements, but the District Court heard and considered extensive evidence about the parties' personal property.

¶37 Without Dianna's financial disclosure statement, Mark argues that the District Court could not assess the value of personal property that Dianna was awarded and therefore erred in failing to offset Mark's equalization payment by the amount of that value. The court awarded Dianna her own personal vehicles, life insurance and bank accounts, her jewelry and paintings, the scrap equipment on the parties' property, the parties' bedroom set and her .25 caliber pistol. The court also awarded Mark items of personal property without assigning a specific value to them. These items include his bank accounts, life insurance, office furniture, framed artwork from his family, tools, a 9mm pistol, a .357 pistol, and a 22.250 rifle. For items not specifically awarded, the court ordered the parties to compile a list and alternate choosing items from the list. Mark's final 19-page financial disclosure, submitted

16

two days before trial, included many of these items and the parties both testified about the items they wanted in the distribution.

¶38 When the property and assets of the parties are complex, "[w]e will not attempt to review every element of [the] distribution." *Kink*, 226 Mont. at 317, 735 P.2d at 314. "Trial courts, acting in equity, are granted far-reaching discretion to fashion 'a fair distribution of the marital property using reasonable judgment and relying on common sense.'" *In re Marriage of Foreman*, 1999 MT 89, ¶ 23, 294 Mont. 181, 979 P.2d 193 (quoting *In re Marriage of Rock*, 257 Mont. 476, 480, 850 P.2d 296, 298 (1993)). In *Lewton*, we held that the district court's failure to specifically value all the assets did not render the findings insufficient to determine whether the distribution was equitable, particularly because the items not valued were personal property items that "were a small part of a complicated estate." *Lewton*, ¶ 19. Here, the court considered the parties' respective items of personal property in its distribution and awarded both parties different items. Mark has not demonstrated that the court's failure to assign a value to Dianna's personal property and to give him credit for that value resulted in an inequitable division of assets. The District Court was dealing with a large and complex marital estate and we will not disturb its distribution absent a showing of an abuse of discretion. *Lewton*, ¶ 19; *Kink*, 226 Mont. at 317, 735 P.2d at 314. Given the court's award of items of personal property to Mark, also without a specific valuation, we conclude that the District Court did not abuse its discretion.

> d. *Tax consequences*

¶39 Finally, Mark argues that the District Court abused its discretion by awarding an equalization payment to Dianna without considering the tax consequences of such a

payment. The court ordered Mark to pay Dianna $892,663 in annual installments over fifteen years with accrued interest. Mark contends that he will be unable to fulfill this yearly installment to Dianna without selling assets or property, which will result in tax liability. He cites *In re Marriage of Haberkern*, 2004 MT 29, ¶ 17, 319 Mont. 393, 85 P.3d 743, for the proposition that a court's failure to consider a "concrete and immediate" tax liability resulting from its property distribution is an abuse of discretion. We also held in *Haberkern*, however, that when liabilities are not immediately taxable, a district court does not abuse its discretion by not considering such liabilities because doing so would be too speculative. *Haberkern*, ¶ 17. In *Haberkern*, we reversed a district court's decision to consider a tax liability involving a marital asset where the distribution order did not specifically force a sale of an asset to satisfy the distribution nor was there an imminent sale of such an asset. *Haberkern*, ¶ 17. We held that "[t]o apply a deduction of a 'reasonable tax rate' to [assets] that *may* be liquidated at *some time in the future* frustrates the goal of achieving a fair and equitable distribution of the marital estate" because "it is unreasonable to consider tax consequences in light of numerous unknown factors such as the value of the account at the time it is eventually liquidated; the tax laws in effect at the time it is eventually liquidated; and when the account will eventually be sold." *Haberkern*, ¶ 19 (emphasis in original).

¶40 The court's order in this case did not require a sale of a particular asset to satisfy the distribution order. Given that we are remanding for recalculation of net worth, the equalization payment amount may change on remand. We are unable to determine whether a "concrete or immediate" tax liability will result from the District Court's property distribution order. We decline to consider this argument further.

**CONCLUSION**

¶41    We reverse the District Court's calculation of the marital estate's net worth and remand for further factual findings and a recalculation. Specifically, the court should correct the calculation of the parties' equipment value and address both the cash the court included from Mark's financial statement and debts the court did not include or address in its findings of fact. We direct the District Court on remand to adjust the distribution of the marital estate if it is equitable to do so based upon its new calculation of net worth. In all other respects, we conclude that the District Court did not abuse its discretion in its distribution of the parties' marital estate.

¶42    Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE