FILED

10/21/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0070

DA 25-0070

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 241N

IN RE THE MARRIAGE OF:

KRISTEN JEAN SCHAFER,

Petitioner and Appellee,

and

THOMAS ANDREW SCHAFER,

Respondent and Appellant.

APPEAL FROM: District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DR-2023-153
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Thomas A. Schafer, Self-Represented, Butte, Montana

For Appellee:

Brad L. Belke, Attorney at Law−PLLC, Butte, Montana

Submitted on Briefs: September 24, 2025

Decided: October 21, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Thomas Andrew Schafer appeals the Second Judicial District Court's Findings of Fact, Conclusions of Law, and Final Decree dissolving his marriage to Appellee Kristen Schafer. Tom argues that the District Court's findings were insufficient and that the court inequitably divided the marital estate. Tom also argues that the District Court erred by imposing discovery sanctions against him and mishandling the proceedings. Considering the limited evidence in the record and Tom's undeveloped arguments on appeal, we affirm.

¶3 Tom and Kristen lived together at 125 Mountain View Road in Butte, Montana, from 2011 until their separation in 2023. The parties had twin girls in 2012 and began filing taxes jointly in 2013. Tom and Kristen married in 2015. Although Tom individually owned 125 Mountain View Road before he met Kristen, the parties shared the home and raised their children there before and during the marriage.

¶4 Tom is a former underground miner. He retired after sustaining a work injury in 2019.[1] Tom receives just over $56,000 annually in permanent Social Security Disability

---

[1] The District Court found that Tom also operates a shooting supplies business out of his home, but it is unclear if the business generates any income. Tom testified that the business is not profitable, and the record is devoid of any financial documents from the business.

Insurance (SSDI) benefits. As part of Tom's SSDI benefits, he receives two monthly payments of $811 for the benefit of his daughters. Kristen stayed home to raise the twins for five years. In 2018, she sought employment outside of the home. Kristen currently works as an Associate Client Manager at the Marsh-McLennan Agency and earns $49,500 annually.

¶5 Tom and Kristen encountered financial struggles during their marriage. They drew from their savings accounts and acquired debt to maintain their lifestyle. At Tom's request, Kristen withdrew $9,700 from her retirement to pay back taxes on 125 Mountain View Road. Tom withdrew $200,000 from his own retirement account and still owes tax penalties from that withdrawal. Both parties had multiple credit cards. Kristen testified that she has roughly $14,000 in credit card debt and that Tom has almost $60,000. Tom refinanced the home in 2013, which increased the mortgage's outstanding balance by about $160,000. The IRS garnished $4,300 from the twins' bank accounts to satisfy Tom's tax debts.

¶6 In August 2023, Kristen filed a Petition for Dissolution of Marriage in the Second Judicial District Court. Kristen asked the court to dissolve her marriage to Tom, distribute the marital estate, and adopt a parenting plan in the twins' best interests. Kristen requested that the District Court order the sale of 125 Mountain View Road and distribute the proceeds equitably, allow the parties to retain their personal property, and require the parties to pay their own debts. Tom initially retained an attorney to represent him in the divorce, but he proceeded pro se after his attorney withdrew in March 2024.

¶7 During discovery, each party argued that the other failed to comply with their disclosure obligations. In May 2024, Kristen filed consolidated motions to compel and for sanctions. She alleged that Tom failed to timely respond to discovery and requested that the court sanction Tom for his failure. Tom also filed multiple discovery motions during the pretrial phase of the proceedings.

¶8 The District Court held a bench trial in December 2024. Most of the testimony centered around the proper valuation and distribution of the marital home. Kristen asserted that the home was worth $620,000 based on a Zillow estimate and tax assessments from the Montana Cadastral. Kristen hired a realtor to conduct a certified market analysis (CMA) of the home, but she testified that Tom obstructed her efforts. On three separate occasions, the realtor traveled to 125 Mountain View Road to perform the CMA, but Tom refused to let her inside. Tom contended that the home was worth between only $275,000 and $290,000. Tom called one witness at trial, who testified that the home needed significant repairs, to support his position that Kristen's estimates overvalued the property. Other than this testimony, Tom submitted no evidence to substantiate his claim.[2]

¶9 During a pretrial mediation, Tom and Kristen settled on a stipulated parenting plan in which they agreed to equally share parenting time and responsibilities. The parties chose to allow the Child Support Services Division (CSSD) to determine child support in accordance with the Montana Child Support Guidelines.

---

[2] Tom testified that the home appraised for $280,000 in 2018. We did not find any documentation of this appraisal in the record.

¶10 The District Court entered its Decree of Dissolution on December 31, 2024. The court found that Kristen was entitled to one-half of the equity in 125 Mountain View Road based on her monetary and non-monetary contributions to the property as a homemaker. Because the parties were unable to agree on the home's value, the court ordered them to sell the residence and equally divide the proceeds. Alternatively, Tom could choose to refinance the property and purchase Kristen's equity. The District Court generally ordered the parties to pay their own debts, retain their personal property, and equally divide their remaining property. The court adopted the parties' stipulated parenting plan in its Order, finding that the plan was in the children's best interests. The court also ordered each parent to "claim one child" so that each would receive one $811 SSDI payment per month.

¶11 The District Court concluded that Kristen's May 2024 discovery motions had merit because Tom failed to disclose that he received Workers' Compensation benefits and had a pending claim seeking damages for his injuries. The court found that Tom's motions were "without merit and were clearly filed to harass" Kristen. The District Court ordered Tom to reimburse Kristen $2,500 for the attorney fees she incurred because of Tom's conduct.

¶12 In a marriage dissolution proceeding, this Court reviews a district court's findings of fact for clear error. *Crowley v. Crowley*, 2014 MT 42, ¶ 24, 374 Mont. 48, 318 P.3d 1031. A district court's finding is clearly erroneous "if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the record convinces us that the district court made a mistake." *Crowley*, ¶ 24 (quoting *Bock*

5

*v. Smith,* 2005 MT 40, ¶ 14, 326 Mont. 123, 107 P.3d 488). We will not disturb a district court's distribution of the marital estate "unless there was a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." *Hutchins v. Hutchins*, 2018 MT 275, ¶ 7, 393 Mont. 283, 430 P.3d 502.

¶13 Tom argues that the District Court erred by failing to value the couple's property and inequitably dividing the estate. Tom also argues that the District Court abused its discretion when it sanctioned him for failing to comply with the discovery process. Finally, Tom claims that the District Judge showed disdain towards him as a pro se litigant and deprived him of a fair trial.

**Valuation and Distribution of Property**

¶14 Before distributing the marital estate, the trial court must make a reasonable valuation of the spouses' assets and debts. *In re Marriage of Robinson*, 269 Mont. 293, 296-97, 888 P.2d 895, 897 (1994). Although the court does not need to make a specific finding of the marital estate's net worth, its findings as a whole must be sufficient for us to determine the estate's net worth and whether the court's distribution was equitable. *Crowley*, ¶ 26. This Court must be able to review a trial court's findings without speculating about its reasoning. *Crowley*, ¶¶ 26, 32 (concluding that the district court's findings were insufficient because it failed to list the assets and liabilities assigned to each spouse).

¶15 Tom primarily disputes the court's valuation and distribution of 125 Mountain View Road. Tom testified that the home was at most worth $290,000, while Kristen asserted that it was worth $620,000. The parties' estimates were based on outdated appraisals and tax assessments that did not account for the home's physical condition. The District Court did not determine a value for the property, noting that Tom thwarted Kristen's attempts to obtain a CMA of the residence prior to trial by refusing to grant Kristen's realtor access to the residence. Because Tom and Kristen could not reach an agreement, and absent satisfactory evidence, the court ordered an appraisal or sale for fair market value to determine the home's value. Considering the disparity between the parties' estimates, the limited and unreliable evidence in the record, and Tom's obstruction of the CMA, we conclude that the District Court did not clearly err when it abstained from valuing the home and instead ordered an appraisal or sale to determine its value.

¶16 We acknowledge that the District Court did not make a specific finding of the marital estate's net worth, nor did it value many of the estate's remaining assets and liabilities. It is the parties' burden, however, to provide the trial court with information to value their property. *Downs v. Downs*, 181 Mont. 163, 165, 592 P.2d 938, 939 (1979) ("We do not feel that the trial judge must become an appraiser, an accountant, a computer, and an all-around genius to appropriately decide the facts as established by the documentation given at trial."). When the parties fail to supply the court with sufficient information to identify and value their property, the court has discretion to make reasonable, common-sense judgments based on the available evidence. *See In re Marriage*

7

*of Richards*, 2014 MT 213, ¶ 38, 376 Mont. 188, 330 P.3d 1193; *In re Marriage of Foreman*, 1999 MT 89, ¶ 37, 294 Mont. 181, 979 P.2d 193; *Downs*, 181 Mont. at 165-67, 592 P.2d at 939-40.

¶17 The record in this case is sparse. There is no evidence that establishes the value of the parties' personal property and accounts, their respective income tax debts, or any remaining property tax penalties on the home. Kristen's testimony is the only source of evidence identifying the amount of each party's credit card debt. We therefore do not fault the District Court for failing to make detailed findings when the parties did not supply the court with sufficient information to do so. Moreover, the District Court found that Tom did not fully disclose his assets and income, and that Tom's "bad faith conduct . . . [has] delayed resolution of this matter without good cause." Tom cannot claim that the District Court committed clear error when the lack of evidence in the record is attributable in large part to his failure to comply with the discovery process or to submit evidence of valuation. We therefore conclude that the District Court's findings of fact are not clearly erroneous.

**Distribution of the Marital Estate**

¶18 Tom challenges the court's apportionment of the parties' debt, their equity in 125 Mountain View Road, and the SSDI payments Tom receives for the twins' benefit. Tom contends that the court failed to consider that his disability limits opportunities for him to work and to increase his income. He therefore asserts that the court's distribution of the couple's property was inequitable.

¶19 The court must equitably apportion the marital estate based on its valuation of the couple's assets and liabilities. Section 40-4-202(1), MCA; *In re Funk*, 2012 MT 14, ¶ 24, 363 Mont. 352, 270 P.3d 39. The court must divide all of the spouses' property, "however and whenever acquired and whether the title to the property and assets is in the name of the husband or wife or both." Section 40-4-202(1), MCA. The court must consider several factors when determining an equitable distribution of property, including the following: the length of the marriage; the age, health, and occupations of the parties; their incomes and potential for growth; the parties' contributions to and dissipations of the estate; and any non-monetary contributions by a spouse as a homemaker. Section 40-4-202(1), MCA. The "court must reach an equitable distribution, not necessarily an equal distribution." *Richards v. Trusler*, 2015 MT 314, ¶ 11, 381 Mont. 357, 360 P.3d 1126. When reviewing a district court's division of property, we consider the unique circumstances present in each case. *In re Funk*, ¶ 6.

¶20 The District Court ordered each party to pay their own credit card bills, income tax debts, and any other personal debts. For example, the court ordered Tom to repay any outstanding tax penalties that he incurred by making an early withdrawal from his retirement and to replenish the girls' savings accounts. The court equitably divided the couple's debt based on which party incurred it as contemplated by § 40-4-202(1), MCA.

¶21 In its Decree, the court found that Kristen was entitled to one-half of the equity in 125 Mountain View Road because she significantly contributed to its value by serving as a homemaker and paying a significant property tax debt from her retirement. Because the

9

parties agreed to split parenting time and responsibilities equally, the court found that each parent should receive one monthly SSDI payment for the twins' support.[3]

¶22  Upon review of the District Court's Order, we observe that it considered the following factors required by § 40-4-202(1), MCA: the parties' incomes and their respective financial contributions to the estate; Kristen's non-monetary contributions to the estate as a homemaker; and the parties' dissipations of the estate.  Although the District Court did not specifically discuss Tom's limited ability to work, it did consider that Tom receives permanent disability benefits of $56,000 annually, which is slightly more than Kristen currently earns.  Because there is limited evidence in the record, we cannot say that the District Court committed "a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." *Hutchins*, ¶ 7. We conclude that the District Court equitably apportioned the estate by considering the required statutory factors in light of the record the parties put before it.

**Discovery Sanctions**

¶23  Tom argues that the District Court erred when it sanctioned him for failing to properly disclose his assets and income.  Although Tom raised this issue on appeal, his brief is devoid of any legal analysis or authority that supports his position.  The appellant has the burden to establish that the district court erred, and this burden cannot be satisfied

---

[3] Tom also challenges the District Court's allocation of the SSDI payments on the ground that the parties agreed to refer the determination of child support to CSSD.  We note that these payments are not included in a parent's income for purposes of determining child support, but they may be credited toward any support owed by the disabled parent.  Admin. R. M. 37.62.144 (2017); *In re Marriage of Cowan*, 279 Mont. 491, 501, 928 P.2d 214, 220-21 (1996).

in the absence of legal authority. *State v. Bailey*, 2004 MT 87, ¶ 26, 320 Mont. 501, 87 P.3d 1032. Although we afford some latitude to self-represented litigants, "it is not this Court's obligation to conduct legal research on [the] appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position." *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, 983 P.2d 339. Because Tom has not developed his argument, we do not further consider this claim.

**The District Court's Treatment of Tom**

¶24 We briefly address Tom's claims that the District Judge mistreated him and rushed the proceedings, thereby depriving him of a fair trial. During trial, the Judge was lenient with Tom when he failed to follow court procedures. Although the Judge cut Tom off during his cross-examination of Kristen, the Judge did so only after warning Tom several times that his examination was argumentative and outside the scope of permissible questioning. The Judge assured Tom that he would be able to discuss whatever he'd like when it was his turn to present his case. We therefore conclude that Tom's claims are not substantiated by the record.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Tom has not demonstrated that the District Court's findings are clearly erroneous or that the court abused its discretion in distributing the

11

marital estate. We affirm the District Court's Findings of Fact, Conclusions of Law, and Final Decree of Dissolution of Marriage.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON