FILED

02/17/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0722

DA 24-0722

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 28N

IN RE THE MARRIAGE OF:

ALEXANDRA LONG,

     Petitioner and Appellee,

  and

JOSÉ BATISTA,

     Respondent and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR-22-127
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        P. Mars Scott, P. Mars Scott Law Offices, Missoula, Montana

     For Appellee:

        Evonne Smith Wells, Thomas H. Stanton, Wells & McKittrick, P. C.,
Missoula, Montana

                Submitted on Briefs:  November 19, 2025

                     Decided:  February 17, 2026

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 José Batista appeals from the Post Trial Findings of Fact, Conclusions of Law and Decree issued by the Fourth Judicial District Court, Missoula County, dissolving his marriage with Alexandra Long (Allie) and distributing their marital estate. We restate the issues as follows: (1) whether the District Court abused its discretion when valuing and distributing the marital estate; (2) whether the District Court erred by not considering Allie's dissipation of marital assets; and (3) whether the District Court applied the correct legal standard in dividing the marital estate. We affirm.

¶3 José and Allie met in 2008 while playing college soccer, and both left college to pursue professional soccer careers. José ended his professional soccer career in 2010 and supported Allie's developing career by traveling with her and her local professional soccer team and by acting as her personal trainer and coach. José and Allie married in October 2016, began living apart in the fall of 2020, and permanently separated in the summer of 2021. They had no children together.

¶4 During the marriage, José helped Allie train and operated a cash-basis gambling enterprise that paid for daily living expenses, but he did not track his income or report it to the Internal Revenue Service. Allie's most successful period playing soccer began just

before their marriage and lasted through 2019. During this period, Allie made the 2016 U.S. Olympic Team and began consistently participating on the U.S. national team. These team memberships allowed Allie to earn substantial sums of money from playing contracts, endorsements, and speaking engagements. Allie acquired a retirement account from the U.S. national team, and she received housing and car allowances through her soccer employment. After the national team won the World Cup in 2019, Allie and José agreed to purchase a pre-construction condominium in New York as an investment. Allie used her savings and her soccer earnings to make a total down payment of $438,852 on the condominium; the remainder of the $1,215,000 purchase price was covered by a mortgage. The condominium was not completed until 2022; neither party lived in it before they separated.

¶5 After José and Allie permanently separated in the summer of 2021, José moved into the unfinished New York condominium. In September 2021, Allie purchased a house in Missoula where she lived with her new partner and their twins, who were born in May 2022. Allie could not play professional soccer while pregnant and during the twins' infancy. She resumed employment with the National Women's Soccer League by February 2023 but has not played on the U.S. national team since 2019.

¶6 Allie petitioned for dissolution in February 2022. The District Court conducted a bench trial on February 24, 2023. At the trial's conclusion, the District Court ordered the parties to immediately list the New York condominium for sale. The District Court held the proceedings in abeyance until the condominium sold, which finally occurred on

3

July 30, 2024. During this period, Allie requested another hearing to resolve outstanding issues relating to changes in the parties' circumstances and the condition of the condominium. José opposed the motion. Allie reportedly was released from her team in January 2024 and remained unemployed, while José lived in the New York condominium until May 2024.[1] After reviewing the parties' proposed Findings of Fact and Conclusions of Law, the District Court determined that no additional hearing was necessary and entered its Post Trial Findings of Fact, Conclusions of Law and Decree (Decree) on November 25, 2024.

¶7 Among other assets and debts, the District Court found that the marital estate included the net proceeds from the sale of the New York condominium ($272,543.35); Allie's equity in her primary residence in Missoula, which she purchased in part using marital funds that she had earned ($115,952); Allie's BMW, which she purchased after the separation and in violation of the temporary economic restraining order using marital funds that she had earned ($18,261); José's vehicle, if he owned one (nominal value);[2] Allie's soccer retirement account ($98,420 at the time of trial but depleted at the time of the Decree); Allie's Acorns account ($11,064 as of May 2022 but worth $1,224 at the time of trial); joint tax debt ($59,552); and cash from José's gambling enterprise stored in a safe

[1] On March 12, 2024, the District Court ordered José to immediately vacate the New York condominium. José objected and moved for the order to be set aside under M. R. Civ. P. 60. José remained in the condominium until at least May 14, 2024, when the District Court denied José's M. R. Civ. P. 60(b) motion and ordered him to vacate it by May 19, 2024.

[2] The District Court noted that it was unclear from the testimony and parties' filings whether José owned a vehicle.

that José spent after the separation ($20,000 at the time of separation). The District Court found that Allie dissipated marital assets by forfeiting $48,000 in earnest money to purchase a Missoula condominium when she did not make a scheduled installment payment.

¶8 The District Court awarded José his gambling business, the $20,000 in cash that was in the safe at the time of separation, and his vehicle if he owned one. Allie received her interest in her Missoula home and associated mortgage, her BMW and associated loan, her depleted soccer retirement account,[3] several businesses in her name with no value, and her forfeited earnest money payment on the Missoula condominium. The District Court divided the $272,543.35 proceeds from the New York condominium sale by distributing $50,000 to José, ordering Allie to use the proceeds to pay the joint tax debt ($59,552), and awarding Allie the remainder (approximately $160,000). The District Court found that Allie would receive "considerably less" than the total amount of $510,558 she had invested in the condominium at the time of the trial, and that José would receive "considerably more" than his total investment of $33,955 over the same period.[4] In considering Allie's dissipation of the marital estate, the District Court explained that it would not be equitable

---

[3] Allie's Acorns account was not listed on the District Court's allocation table, attached to the Decree as Exhibit A, but the District Court noted in its Findings of Fact that Allie argued that she should receive its full value. On appeal, both parties treat the Acorns account as if it was awarded to Allie at its value of $11,064 as of May 2022, rather than its value of $1,224 as of trial.

[4] The District Court found that Allie's total contributions to the New York condominium included the down payment, mortgage payments, utility fees, HOA fees, and improvements. José's total contributions were not broken down by category.

5

to award José a larger portion of the remaining assets when José "did little to assist" Allie in sustaining her investments after her lucrative athletic success ended.

¶9 Absent clearly erroneous findings of fact, we will affirm a district court's apportionment of the marital estate unless the court abused its discretion. *In re Marriage of Ash & Elliot*, 2024 MT 273, ¶ 12, 419 Mont. 111, 558 P.3d 1169. An abuse of discretion occurs if the court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in a substantial injustice." *Ash*, ¶ 12 (citing *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28). A finding of fact is clearly erroneous if not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the record convinces us that the district court made a mistake. *Ash*, ¶ 12 (citing *Tummarello*, ¶ 21). We review a district court's conclusions of law for correctness. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39.

¶10 Section 40-4-202, MCA, grants the district court "broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances." *Funk*, ¶ 6. An equitable distribution does not require an equal division of marital assets, liabilities, or net value. *In re Marriage of Elder & Mahlum*, 2020 MT 91, ¶ 9, 399 Mont. 532, 462 P.3d 209 (citing *In re Marriage of McNellis*, 267 Mont. 492, 501, 885 P.2d 412, 418 (1994)). The district court must consider specific statutory factors in apportioning the marital estate, including the duration of the marriage; the parties' age, health, station, occupation, income,

employability, and needs; the parties' contribution to or dissipation of value of the marital estate; and a spouse's contribution as a homemaker. Section 40-4-202(1), MCA.

¶11 José argues that the District Court abused its discretion under § 40-4-202, MCA, by failing to make a specific finding regarding the net worth of the marital estate and by arbitrarily distributing the net proceeds from the sale of the New York condominium.

¶12 In order to equitably apportion the marital estate, the district court "must determine and consider the assets and liabilities of each of the parties." *In re Marriage of Crowley*, 2014 MT 42, ¶ 26, 374 Mont. 48, 318 P.3d 1031 (quoting *Funk*, ¶ 24). A specific finding of the marital estate's net worth is not mandatory. *In re Marriage of Richards*, 2014 MT 213, ¶ 15, 376 Mont. 188, 330 P.3d 1193. Instead, the court's findings must be sufficient for this Court to determine the net worth, to review whether the marital distribution is equitable, and to permit review without speculating about the district court's reasoning. *Richards*, ¶ 15; *Crowley*, ¶ 26.

¶13 In this case, the District Court made sufficient findings for us to determine the net worth of the marital estate and to review whether the distribution is equitable, despite not totaling the assets or awards. *See Crowley*, ¶ 26. The District Court found that Allie's equity in her Missoula home, her equity in the BMW, and Allie's depleted retirement and Acorns accounts were included in the marital estate. The District Court made specific findings regarding the value of these assets and debts, among others, and divided them as set forth on Exhibit A to the Decree. José contends that the District Court abused its discretion by not compensating him for Allie's use of marital funds to obtain these assets,

7

but the District Court was not required to split each asset and liability equally. *See Elder*, ¶ 9. Nor was the District Court required to make a specific finding of the marital estate's net worth. *See Richards*, ¶ 15. From the District Court's findings, we can determine that the District Court distributed a loss of approximately $55,900 to Allie: $291,700 of dissipated assets, minus the net loss from the condominium sale of approximately $288,000, minus the joint tax debt of $59,552. The District Court distributed $36,045 to José: $20,000 in cash from his gambling operation and $16,045 net gain from the condominium sale.

¶14     We do not need to speculate about why the District Court departed from the 50/50 split proposed at trial. The District Court reasoned that splitting the proceeds equally would ignore Allie's "lopsided cash investment" and José's "exclusive possession of the property as a living space" for the duration of the parties' ownership while Allie paid for other living space. The District Court explained that its allocation of $50,000 from the proceeds to José accounted for Allie's premarital contribution and José's "long and exclusive use of the property at Allie's expense." The District Court found that Allie paid a $120,016 deposit on the New York condominium from her savings, after noting Allie's testimony that she had saved about $120,000 as of the date of the marriage. The District Court apportioned the couple's loss on the sale of the condominium entirely to Allie, who received approximately $288,000 less than she contributed, while José received approximately $16,000 more than he contributed. These findings and rationale are sufficient to determine that the District Court used conscientious and reasonable judgment to divide the

8

condominium proceeds. *See Richards*, ¶ 15. The District Court did not abuse its broad discretion under § 40-4-202(1), MCA, when valuing and equitably distributing the marital estate. *See Ash*, ¶ 12; *Funk*, ¶ 6.

¶15 Next, José argues that the District Court clearly erred by not considering Allie's alleged dissipation of the marital estate. He asserts that the District Court could not properly consider dissipation without awarding him specific offsets for Allie's unilateral use of marital funds for the forfeited earnest money deposit, Missoula home purchase, BMW purchase, and depletion of her retirement and Acorns accounts. We disagree.

¶16 Section 40-4-202(1), MCA, provides that when apportioning the marital estate, the court "shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit." The "determination of the value of such contribution or dissipation is thus a question of fact for the trial court." *In re Marriage of Peterson*, 211 Mont. 118, 122, 683 P.2d 1304, 1306 (1984).

¶17 The District Court considered Allie's dissipation of the marital estate pursuant to § 40-4-202(1), MCA, and its findings of fact are not clearly erroneous. Allie and José testified about the existence and value of each of the four dissipation events alleged by José. The District Court expressly found that Allie dissipated the marital estate by forfeiting $48,000 in earnest money and attributed the value solely to her. The District Court also found that Allie unilaterally used $128,000 of marital funds to purchase her Missoula home, used marital funds to purchase a BMW, and depleted her retirement and Acorns accounts worth $109,484. The District Court's overall distribution of the marital

9

estate reflects Allie's dissipation, considering that Allie was awarded a total loss of approximately $55,900 and José received $36,045. *See* Opinion, ¶ 13.

¶18    José asserts that the lack of specific offsets to compensate him for Allie's unilateral use of marital funds indicates that the District Court failed to consider Allie's dissipation. While José's cited authorities support the proposition that a court *may* offset a spouse's dissipation with a specific award, it is not required to do so in order to reach an equitable distribution. *See In re Marriage of Lewis*, 2020 MT 44, ¶ 10, 399 Mont. 58, 458 P.3d 1009; *In re Marriage of Skinner*, 240 Mont. 299, 305, 783 P.2d 1350, 1354 (1989); *In re Marriage of Cooper*, 243 Mont. 175, 178-79, 793 P.2d 810, 812 (1990); *In re Marriage of Merry*, 213 Mont. 141, 152-53, 689 P.2d 1250, 1255-56 (1984), *overruled in part on other grounds by Funk*, ¶ 34.  The District Court found that José's financial and nonmonetary contributions to the marriage were minimal, and that when Allie lost the ability to maintain her investments, José did little to assist.  The District Court concluded that an equitable result did not require awarding José a larger portion of the remaining marital estate.  José has not demonstrated that the District Court erred in its valuation of his contributions to the value of the estate or his nonmonetary contributions to the marriage compared to Allie's dissipation of the marital estate.  José has not demonstrated that these findings were unsupported by substantial evidence or resulted from the District Court's misapprehension or mistake.  The District Court did not clearly err in its dissipation findings. *See Ash*, ¶ 12.

10

¶19 Finally, José argues that the District Court used the wrong legal standard to distribute the marital estate by impermissibly considering the parties' relative financial contributions during the marriage and outcomes upon its dissolution.

¶20 José relies on *Ash* to assert that the District Court improperly attempted to return Allie and José to their premarital financial stations rather than equitably dividing the marital estate pursuant to § 40-4-202(1), MCA. *Ash*, ¶ 21. In *Ash*, we held that the trial court abused its discretion by "ascribing more value" to the parties' premarital economic stations—not a factor under § 40-4-202(1), MCA—than to one party's significant nonmonetary contributions to the marital estate, a required statutory factor. *Ash*, ¶¶ 19-21. The court improperly returned the parties to their premarital financial positions based on a strict accounting of their financial investments in the marital estate, rather than seeking an equitable distribution based on the factors enumerated in § 40-4-202(1), MCA. *Ash*, ¶ 21.

¶21 Unlike in *Ash*, the District Court's observations about José's financial gains and Allie's financial losses during the marriage do not suggest that it attempted to return the parties to their premarital economic stations. Rather, these observations support the District Court's equitable distribution of the marital estate according to the required statutory factors. Based on the evidence before it, the District Court found that the couple's lavish lifestyle and significant real estate investments were primarily fueled by Allie's transitory success as a professional soccer player, whereas José's financial contribution was "minimal." After hearing the parties testify about José's nonmonetary contributions, the District Court found that José overstated his role as Allie's trainer and that his

11

nonmonetary contribution to the family unit was "de minimis and often even negative." The District Court's factual findings support its conclusion that the distribution was equitable when José did "little to assist" in maintaining the marital investments once Allie's athletic career ended. We will not second-guess the District Court's determination of the strength and weight of conflicting testimony, as it sits in the best position to judge witness credibility. *In re Marriage of Crilly*, 2005 MT 311, ¶ 25, 329 Mont. 479, 124 P.3d 1151. The District Court considered the necessary factors to equitably distribute the marital estate pursuant to § 40-4-202(1), MCA.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ BETH BAKER